*Allen & Craddock* for plaintiff.

---

## Mason *vs.* Cowan's Administrator.

ERROR TO THE MERCER CIRCUIT.

*Construction. Evidence. Tender.*

JUDGE EWING delivered the Opinion of the Court.

COVENANT.

*Case* 3.

*October* 14.

Contract set out.

Cowan and Mason were near neighbors, and the former was a farmer, and raised and fattened hogs for market. In the fall of 1836, they entered into the following agreement: "This writing is to show that James F. Mason "has bought of Wm. C. Cowan all the hogs that he may "have for market, next fall; to be delivered about the "25th or 10th of October. The lot of hogs are to aver-"age two hundred and fifty pounds, and be in number, "about one hundred, more or less, at the price of five "dollars per hundred pounds, gross, payable in ninety "days after delivery, the paper well indorsed. It is fur-"ther understood that no hog is to weigh less than two "hundred, gross.

"Signed this 9th of November, 1836.
. "*Wm. C. Cowan.*
"*James F. Mason.*"

Suit was brought upon this writing by the Administrator of Cowan, in covenant, charging a breach in the failure and refusal of Mason to receive and pay for, or secure payment for the hogs.

It appears from the testimony, that on the 17th or 18th of October, the parties met by agreement, at the house of

Evidence on the trial.

MASON
vs
COWAN'S AD'MR.

Cowan, for the purpose of weighing, marking, and setting apart the hogs that were to be received by Mason; that they commenced doing so, out of the stock hogs of Cowan, that had been prepared for market, when it was discovered that there were only ten or eleven, of the whole number, that came up to the average stipulated by the contract. Thereupon, the weighing was discontinued by Cowan, and Mason went home. Afterwards, Cowan made an arrangement with a drover, who had about one hundred hogs, of large size and heavy weight, in the neighborhood, by which he was to have so many of his hogs at four dollars, as would bring up forty nine of his own stock hogs to the average and make up the hundred, in case Mason received them, and if he did not, then the drover was to take them back at the same price, and receive pay for the trouble of weighing. The forty nine of the stock of hogs of Cowan, and the whole hundred of the drover, were driven together to Mason's, and the hundred including the forty nine, tendered to him. He refused to receive them, and the hogs stipulated for with the drover, were re-delivered to him at the same price, and the forty nine sold to him, at three dollars and twelve and one half cents, per hundred, and all driven by him to market. Hogs had fallen from five, to about three dollars and twelve and one half cents, in the fall of 1837.

Waiving numerous preliminary points, made in the progress of the trial, the question occurs upon the merits, Was Mason bound to receive the hogs tendered? We think he was not.

The contract, in our judgment, clearly points to, and was intended by the parties to embrace the hogs fattened and prepared for market by Cowan, and not to those that might be bought by him, that had been fattened and prepared for market, by others. They were neighbors. Cowan was a hog raiser, and it does not appear that he was in the habit of buying fattened hogs to sell on speculation. The number, "about one hundred, more or less," is indefinite, and was made so, no doubt, with a view to limit the contract to the stock of hogs fattened by Cowan. The number might be *more* or *less* than one hundred, that might be brought within the average. But it was expect-

Contract at a fixed price for "all the hogs a neighbor farmer may have for market next fall, about 100 in number, more or less, to be deliv'd then," will embrace only the hogs fatted by the vendor, & not hogs fatted by others, and purchased by him, of a drover.

ed that there would be *about* that number. Had the contract looked to the purchase of hogs by Cowan, the number would most probably have been fixed, and not left uncertain and indefinite. In that case, there would be nothing to fix and limit the precise number, or reduce the contract to certainty. In this, the number is regulated by the hogs fattened and prepared for market by Cowan, that came within the average. It is like purchasing a future crop of hemp or tobacco, to be raised by the vendor, of an agreed quality. The quantity is uncertain, but supposed to be about a certain quantity, but to be regulated by the quantity raised of the agreed quality.

If Cowan could purchase hogs fattened by others, had the price risen to six dollars, he could have sold out, and then he would have no hogs for market at the time agreed on, and could have escaped from all responsibility on the contract. If he had a right to buy, and force Mason to take those purchased, in case hogs had fallen, he would have been bound to buy in case they had risen in value. We think no such obligation rested on him or was intended to rest on him. If he was not bound to buy, neither was Mason bound to take those he might buy. Mason being acquainted with Cowan's stock of hogs, and his manner of fattening and preparing them for market, might have been willing to give for them the price agreed on, and yet have been unwilling to allow that price for hogs promiscuously purchased, that had been fattened and prepared for market by others.

This interpretation of the contract is fortified by the facts that the parties themselves so understood it, as appears from their meeting and commencing the weighing of Cowan's stock of hogs on the 17th or 18th of October.

Nor do we think that Mason could be made responsible for the ten or eleven hogs of Cowan, which reached the average, for two reasons:

First, they fell so far below the supposed number agreed on, as not to come within the spirit of the contract.

And secondly, the weighing on the 17th or 18th was discontinued by Cowan, and those ten or eleven not then offered or tendered to Mason, nor offered or tendered af-

Vol. I. 2

*Margin notes:*

MASON
*vs*
COWAN'S ADM'R

Circumstances not apparent in the writing, may show the intention of the parties and effect the construction thereof.—Subsequent acts of the parties may have the same effect.

Tender.

terwards, otherwise than in conjunction with those conditionally procured from Gaines.

Upon the whole, we think that the Court improperly instructed the jury, and that the verdict is against evidence, and a new trial should have been granted.

It is therefore, the opinion of the Court, that the judgment of the Circuit Court be reversed and cause remanded, that a new trial may be granted without costs, and the plaintiff is entitled to costs in this Court.

*Owsley & Menifee* for pl'tf: *Daviess & Harlan* for def't.

