DAVIS *v.* MURPHY.

*A.* contracted with *B.* for the purchase of all the wheat he, *B.*, might raise on his farm for the current season, at a certain price per bushel. *Held,* that there was no implied warranty, on *B.'s* part, as to the quality or value of the wheat to be delivered.

Tuesday,
May 29.

APPEAL from the *Henry* Circuit Court.

WORDEN, J.—*Davis* brought suit against *Murphy* upon a contract, which is set out as follows, viz.:

"I, *Joel Murphy*, have this day bought of *Nathan Davis*, all the wheat he raises this season on his home farm, except enough for his bread and seed-wheat, for which I agree to pay one dollar, in good *State Bank of Indiana* or *Ohio State Bank* paper money, at the time of delivery, at *Millville, Henry* county, *Indiana*, which is to be between the first day of *August* and 10th day of *September* next. I agree to furnish a sufficient number of sacks at *Millville* when requested, by mail, and one week's notice before the wheat is to be threshed. This 23d day of *June*, 1857.

[Signed]          "*Joel L. Murphy.*"

The complaint avers that the words "per bushel" were, by mistake of the draftsman, omitted and left out after the words "one dollar," contrary to the agreement and purpose of the parties. It it averred that the plaintiff raised on his home farm that season three hundred and twenty bushels of wheat, over the amount required by him for bread and seed; and that after giving notice, &c., he did, on the 8th of *September*, 1857, haul to said *Millville*, and had ready to deliver to the defendant, the wheat, and then and there requested him to receive the same and pay him therefor according to the agreement, but the defendant refused and still refuses so to do; and that the plaintiff still has the wheat ready to deliver to the defendant if he will receive the same. There are other averments in the complaint not necessary to be here noticed.

The defendant answered, amongst other things, as follows: "That at the time of making said agreement, to-wit, on, &c., the wheat spoken of in said agreement was

unripe and not matured, but green and growing on the farm of said plaintiff; that before said wheat ripened or matured, it was stricken with the rust, and otherwise blasted and injured to such an extent that the same never filled or properly matured, but was harvested and threshed, and hauled to said *Millville* by said plaintiff, in a shriveled, blasted, and unmerchantable condition; that the defendant had no knowledge of the condition of said wheat until after the same was so hauled to said *Millville* by the plaintiff; that he refused to receive and pay for said wheat, because of its unmerchantable and unsaleable condition as aforesaid."

To this paragraph of the answer the plaintiff demurred, but the demurrer was overruled, and he excepted. There were other pleadings in the cause; but the above present the question upon which the case turns. Judgment was entered for the defendant.

In order to test the correctness of the ruling on the demurrer, it is necessary to ascertain what is the true interpretation and effect of the contract set out. It is contended, on the one hand, that there was an implied warranty that the wheat, when delivered, should be merchantable; while, on the other, it is insisted that no such implication attaches, and that *Murphy* was bound to receive and pay for the wheat, at the stipulated price, although it might be shriveled, blasted, and unmerchantable.

By the terms of the contract, *Murphy* bought of *Davis*, at the stipulated price, "all the wheat he (*Davis*) raises this season on his home farm, except," &c. By this contract, *Davis* was not bound to deliver, nor was *Murphy* bound to receive, any other wheat than that which *Davis* should raise on his home farm that season.

"When a sale is of particular classes and descriptions of goods generally, to be selected by the vendor, such as a sale of so many measures of corn, wine, oil, or fruit, and not of any specific ascertained parcel of goods, the vendor will fulfill his contract by furnishing any goods fairly answering the description given by him. When, on the other hand, the precise article intended to be bought and sold

was ascertained and identified at the time of the making of the bargain, the vendor must deliver the identified thing so fixed upon and ascertained, and cannot fulfill his contract by tendering and delivering anything else of a corresponding nature." Add. on Cont., p. 228.

The contract in question being for certain specific wheat, viz., that which *Davis* raised on his home farm that season, his obligation required a delivery of that particular wheat, although it might be more valuable than ordinary wheat that would come up to the standard of a merchantable quality. On the other hand, a delivery of the wheat contracted for would be a discharge of his contract; and he would be entitled to the stipulated price, although the wheat fell short of the standard, unless there was an implied warranty that the wheat should come up to that standard.

The following observations of an eminent jurist on the subject of implied warranties, are worthy of quotation: "If there be no express warranty, the common law, in general, implies none. Its rule is, unquestionably, both in *England* and in this country, *caveat emptor*—let the purchaser take care of his own interests. This rule is apparently severe, and it sometimes works wrong and hardship; and it is not surprising that it has been commented upon in terms of strong reproach, not only by the community, but by members of the legal profession; and these reproaches have, in some instances, been echoed from tribunals which acknowledge the binding force of the rule. But the assailants of this rule have not always seen clearly how much of the mischief apparently springing from it arises rather from the inherent difficulty of the case. As a general rule, we must have this or its opposite; and we apprehend that the opposite rule—that every sale implies a warranty of quality—would cause an immense amount of litigation and injustice. It is always in the power of a purchaser to demand a warranty; and if he does not get one, he knows that he buys without warranty, and should conduct himself accordingly; for it is always his duty to take a proper care of his own interests, and to use all that

precaution or investigation which such case requires; and he must not ask the law to indemnify him against the consequences of his own neglect of duty." 1 Pars. Cont. 460.

To this general rule that the law implies no warranty of the quality of goods, there are numerous exceptions; but we are of opinion that the contract in question does not fall within any of them.

It may be conceded that on principles that are universally understood, where there is a contract to deliver a quantity of a given article, for example, a hundred bushels of wheat, a merchantable or marketable quality of the article is always intended by the parties. *Howard* v. *Hoey*, 23 Wend. 350. But the case at bar does not come within that principle. Such a contract could be discharged by the delivery of any wheat of a merchantable quality, it not being for any particular and specified wheat. The Court in that case note the natural and obvious distinction between such a contract and a contract for the future delivery of a determinate and specified article. They say: " The common law will be found to have acted on the former rule (*caveat venditor*) in respect to executory sales, or more properly speaking, agreements to make sales of indeterminate things; though I do not find any case expressly holding the distinction. In short, there is always a warranty or promise implied, that the indeterminate thing to be delivered, should at least not have any remarkable defect; though the rule of the common law is clearly otherwise in respect to what is properly denominated a rule." A contract for the future delivery of a specific thing, as in the case at bar, undoubtedly stands upon the same ground, so far as warranty of quality is concerned, as executed contracts for the sale of property.

Nor does the case fall within the exception that where goods are ordered of a manufacturer for a particular purpose, there is an implied warranty that they shall be fit for the purpose designed. Even were a wheat-grower to be considered, in respect to wheat, a manufacturer, still it does not appear that the wheat purchased was intended

for any particular purpose; but were it so, the purchaser having contracted for the particular wheat specified, took upon himself the risk of its answering the intended purpose.   Pars. on Cont. 470.—*Chanter* v. *Hopkins*, 4 M. and W. 399.

The case does not come within another exception to the general rule—that where an examination of the article sold is, from its nature and situation at the time of the sale, impracticable.   The defendant had an opportunity to examine the situation of the growing wheat, and had the opportunity of judging as to its prospects, equally with the plaintiff.   *Vide Humphreys* v. *Comline*, 8 Blackf. 516.

The case of *Sutton* v. *Temple*, 12 M. and W. 52, is strongly in point here.   *A.* hired, in writing, the eatage or pasturage of twenty-four acres of land from *B.* for seven months, at a rent of £40, and stocked the land with beasts, several of which died a few days afterwards from the effect of a poisonous substance which had accidentally spread over the land without the knowledge of *B.*   *Held*, that *A.* could not abandon the land for breach of an implied contract in *B.*, but continued liable for the whole rent.

. "The law does not imply from the mere seller of an article in its natural state, who has no better means of information than the purchaser, and who does not affirm that the article is fit for any particular purpose, any warranty or undertaking beyond the ordinary promise that he makes no false representations calculated to deceive the purchaser, and practices no deceit or fraudulent concealment, and that he is not cognizant of any latent defect materially affecting the marketable value of the goods."   Add. on Cont. 230.

The construction sought to be put upon the contract in question, by the defendant, would lead to what would seem to us to be an absurdity.   If the contract, by the construction of its terms, or by way of implication, be held to mean that the wheat shall be of a merchantable quality, or otherwise that the purchaser is not required to take and pay for it, this obligation must be mutual, and

the seller would not be bound to deliver it unless it were of that quality, for he would not be bound to deliver that which the purchaser would not be bound to receive. Now supposing that wheat, at the time this was to have been delivered, was worth, say a dollar and a half per bushel, and the plaintiff could sell this particular wheat to some one else, it not being merchantable, for a dollar and a quarter per bushel, and did so, it is very clear to our minds that in a suit by the defendant against him for a failure to deliver the wheat according to the contract, it would be no defense for him to say that the wheat was unmerchantable, and therefore he was under no obligation to deliver it according to the contract, but had a right to take advantage of the rise in the market.

We are of opinion that by the settled rules of the law, the defendant, having bought, in the language of the contract, "all the wheat he (*Davis*) raises this season on his home farm," &c., he took upon himself not only the risk as to the value of wheat generally, but also as to the value and quality of the particular wheat thus purchased.

It follows that the answer was no bar to the action, and that the demurrer to it was improperly overruled.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. Brown* and *W. Grose*, for the appellant.

*J. H. Mellet* and *E. B. Martindale*, for the appellee.