BALES *v.* WEDDLE.

Where a party to a contract treats it as unrescinded, and sues for a breach of it, he must set out the instrument, or a copy, as the foundation of his action. *Aliter*, where he treats it as rescinded, and sues to recover back money paid under it.

If a party sells personal property, as a lot of hogs, to be delivered at a future time, it seems he may go into the market and buy them for delivery under the contract; but if, at the time of the contract, he represents that he then has the property on hand, and thereby obtains an advance of money thereon, when, in fact, he has not the property on hand, it is a fraud which will justify a rescission of the contract.

APPEAL from the *Hendricks* Court of Common Pleas.

*Wednesday, June 6.*

WORDEN, J.—Suit by *Weddle* against *Bales.* The complaint contains three paragraphs. The first is for money had and received generally. The second alleges, in substance, that the plaintiff paid to the defendant the sum of 800 dollars (which he seeks· to recover back), upon the following contract, entered into between them, viz.:

"This is to certify that I have this day sold to *Aaron Weddle,* 200 hogs, to be good, merchantable, corn-fatted hogs, to weigh two hundred pounds and over, for four dollars per hundred weight gross, and to be weighed at *E. Bales',* between the 25th of *November* and the 5th of *December,* 1857; and in consideration of which, I receive 200 dollars in hand, and am to receive 600 dollars more the 15th of *April,* drawing 10 per cent. interest until the hogs are weighed, when I am to receive the balance. *March* 5th, 1857. [Signed] *Eden Bales.*"

It is alleged that the defendant, at the time of making the contract, falsely and fraudulently represented to the plaintiff that he had on hand, and in his possession, the two hundred hogs, whereby the plaintiff was induced to make the payments aforesaid, whereas the defendant had not, at the time of making the contract, two hundred hogs, nor any part thereof, wherefore the contract was void; that the plaintiff has requested the defendant to return the money, which he fails and refuses to do; wherefore, &c.

The third paragraph alleges the like payment upon the

contract, averring that the defendant, between the 25th day of *November* and the 5th day of *December*, 1857, had not two hundred hogs of the kind and description mentioned in the contract, and, therefore, could not comply with the terms thereof; nor did he ever weigh out to the plaintiff said hogs, and although the plaintiff requested the delivery thereof, according to the terms of the contract, the defendant wholly failed and refused them, wherefore he has received no consideration for the money thus paid; that he has demanded the same, but the defendant refuses to pay; wherefore, &c.

Demurrers were filed to the second and third paragraphs of the complaint, which were overruled by the Court, and the defendant excepted. Answers were filed and issues formed, and the cause tried by the Court. Finding and judgment for the plaintiff, a new trial being refused.

The ruling of the Court upon the demurrers is, amongst other things, assigned for error.

The objection made in the brief of counsel for the appellant, to the paragraphs demurred to, is that neither of them contains the allegation that *Weddle* was ready, or offered to comply with his part of the contract. Were the paragraphs based upon the written contract, perhaps such allegation would be necessary. See, however, *Boyle* v. *Guysinger*, 12 Ind. R. 273. But we do not regard the paragraphs as counting upon the written agreement, and seeking to recover damages for its non-performance by the defendant. They are special counts to recover the money paid by the plaintiff upon the contract. They treat the contract as rescinded, and go for the money paid on it, and do not treat the contract as in force, and seek damages for its breach by the defendant. Hence no allegation that the plaintiff performed, or was ready and willing, or offered to perform his part of the contract, could be at all necessary, if the facts set up were sufficient to authorize the plaintiff to treat the contract as void, or as rescinded.

There are two allegations in the second paragraph, that seem to require some notice. First, that at the time of making the contract, *Bales* had not the hogs, nor any por-

tion of them; and, second, his fraudulent representation that he had them.

In *Bryan* v. *Lewis*, 21 E. C. L. 467, it was held "that if a man sell goods to be delivered at a future day, and neither has the goods at the time, nor has entered into any prior contract to buy them, nor has any reasonable expectation of receiving them by consignment, but means to go into the market and buy the goods which he has contracted to deliver, he cannot maintain an action upon such contract. Such a contract amounts, on the part of the vendor, to a wager on the price of the commodity, and is attended with the most mischievous consequences." But this doctrine was entirely overturned in the later case of *Hibblewhite* v. *McMorine*, 5 M. and W. 462, Barons PARKE, ALDERSON and MAULE, each delivering an opinion. MAULE, B., remarks: "I always considered the doctrine laid down in *Bryan* v. *Lewis*, as contrary to law, and most inconvenient in practice; and I have often heard it spoken of with great suspicion, both by lawyers and mercantile men, upon both grounds, as against law, and against all mercantile convenience."

A distinction may be taken between contracts by which one person agrees to sell to another, at a future day, property not professed to be then owned by the seller; and those contracts which purport to sell property then owned by the seller, to be delivered at a future day. Perhaps the one class of contracts might be good, and the other void, where the property, the subject of the contract, was not owned by the vendor at the time of the contract.

The case of *Mason* v. *Cowans*, administrator, 1 B. Mon. 7, involves the construction of a contract as to what was intended to be sold. The contract specifies that "*James F. Mason* has bought of *William C. Cowan*, all the hogs that he may have for market next fall, to be delivered about the 25th or 30th of *October*; the hogs to average, &c., and be in number about one hundred, more or less." The Court say: "The contract, in our judgment, clearly points to, and was intended by the parties to embrace the hogs fattened and prepared for market by *Cowan*, and not

May Term, 1860.

BALES
v.
WEDDLE.

those that might be bought by him, that had been fattened and prepared for market by others."

In *Alexander* v. *Dunn*, 5 Ind. R. 122, the contract was as follows:

"*Gosport, October* 5th, 1847. We this day agree to receive from *Samuel F. Dunn*, between fifty-five and seventy-five pork hogs, to be delivered to us in our pork-house in *Gosport*, net, for which we agree to pay him three dollars per hundred pounds net—said hogs to be delivered in the month of *December*. The money to be paid on the delivery of the hogs. [Signed,] *W. D. Alexander & Co.*"

The Court say: "It is well settled that *Dunn* could not purchase hogs to fill the contract. The hogs purchased by *Alexander*, were the hogs owned by *Dunn* at the time the contract was made. If *Dunn* did not then own a suffi- number which could, at the time of delivery, be made to meet the average weight required, *Alexander* was released." The case in B. Monroe, *supra*, is cited in support of the position.

If the case of *Alexander* v. *Dunn* gives a correct exposition of the contract in that case, and the law as applied to it, it is decisive of the point under consideration. But we do not choose to determine the case upon the ground that the contract was void, simply because *Bales* did not own the hogs at the time of the contract. There is an element in the case that renders it unnecessary for us to express any opinion upon this point. *Vide Wright* v. *Blachley*, 3 Ind. R. 101. We are of opinion that the false and fraudulent representations made by the defendant, as charged in the paragraph under consideration, that he had the hogs on hand and in his possession, whereby he intended the plaintiff to pay the money on the contract, was such a fraud as vitiated the contract, and entitled the plaintiff to treat it as void, and sue for the money thus paid. *Weddle* might well be conceived to have been willing to contract with *Bales* for the hogs which he supposed *Bales* had on hand, fitting for the market next fall, at a given price, and to make advances thereon, when he would have refused to make any such contract or advances, had

May Term,
1830.

BALES
v.
WEDDLE.

he known that *Bales* had not the hogs, but expected to purchase them in order to discharge the contract. We are of opinion that the demurrer was correctly overruled as to the second paragraph of the complaint.

The third paragraph is clearly good, and the demurrer to it correctly overruled. That alleges that, at the time the hogs were to have been delivered, the defendant had not the hogs, and could not comply with the contract. Mr. *Chitty* says: "If neither party be ready at the appointed time, and both are in default, the contract seems to be at law *ipso facto* dissolved, and the deposit is recoverable, unless the time has been prolonged by consent." Chit. on Cont., 310. Again, at p. 622: "Where money has been deposited or paid on a contract, and before any benefit has been derived by the payor, or any part of the contract has been performed by the other party, the consideration wholly fails, an action may be maintained upon the common count to recover back the amount. Thus, if the purchaser of an estate, &c., by auction or private contract, pay a sum of money as a deposit, or in part of the purchase-money, and a good title cannot be made out according to the contract, the money may be recovered back upon the common count. It is also sustainable in such case, if neither party is ready to complete the contract at the stipulated time, and each party is in default."

We have already seen that the second and third paragraphs are for the recovery of the money paid on the contract, setting out the facts more specially than is done in the ordinary common count.

The motion for a new trial, we think, was correctly overruled. The evidence shows that both parties were in default, and that neither could have maintained an action on the contract. *Bales* did not have the hogs weighed for *Weddle*, nor does it appear that he ever offered to perform the contract on his part, or was ready to perform it. Indeed, from the evidence, it is doubtful whether he had a sufficient number of the kind and description of hogs to discharge the contract. The testimony has a tendency to show that the contract was somewhat modified, and the

time for the delivery of the hogs prolonged; but *Bales* does not appear to have performed, or offered to perform his part of the contract, within the prolonged time, or afterwards. *Weddle* offered and gave evidence that, after the time for the delivery of the hogs, he demanded them, and offered to pay for them according to the contract. To the introduction of this evidence, *Bales* excepted. Suppose this evidence were stricken out as incompetent, there is still enough left to abundantly sustain the finding. The plaintiff having proven the payment of the money, and both parties being in default, and no action being maintainable by either upon the contract, the plaintiff was entitled to recover back the money thus paid. In addition to the authorities already cited, the case of *Harris* v. *Bradley*, 9 Ind. R. 166, is directly in point. The Court say: "This, then, is a case in which both parties are in default. Neither could have maintained an action upon the agreement, and it must, therefore, be held rescinded. The result is, that the plaintiffs were entitled to recover on the paragraph for money had and received."

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages and costs.

*C. C. Nave* and *J. Witherow*, for the appellant.

*H. C. Newcomb*, *J. S. Tarkington*, and *L. M. Campbell*, for the appellee.