## SHIPP *v.* BOWEN and Another.

CONTRACTS.—Where a sale is of particular classes or descriptions of goods, generally, to be selected by the seller, such as a sale of so many measures of corn, and not of any specific ascertained parcel of goods, the seller will fulfill his contract by furnishing any goods fairly answering the description given by him. Page 53.

SAME.—But when the precise article intended to be bought and sold is ascertained and identified at the time of making the bargain, the seller must deliver the identical thing so fixed upon and ascertained. Page 53.

Alexander *v.* Dunn, 5 Ind. 122; Daggy *v.* Cox, 19 *id.* 142, overruled.

APPEAL from the *Johnson* Circuit Court.

RAY, J.—This action was brought by the appellee, charging a violation of the following contract:

"*March* 20th, 1861. Received of *Joshua Shipp* fifty dollars, in part payment on four hundred merchantable hogs, no hog to weigh less than 60 lbs. gross, and as big and fat as can be conveniently made, to be delivered and weighed at *S. B. Bowen's* scale, from the 20th of *August* to the first day of *September* next, at *Simon B. Bowen* and *Henry Endsley's* option. On all sows that are with pig there is to be a deduction made that will make them merchantable. The above hogs

are to be paid for on delivery, at four dollars and fifty cents per hundred pounds gross.

JOSHUA SHIPP."

The complaint alleged that hogs of the description and number were tendered, at the date and place fixed in the agreement; that appellant refused to receive them; that hogs had greatly depreciated in value, and appellees were compelled to dispose of them at a loss of two dollars on the hundred pounds.

A demurrer was overruled to the complaint, and an answer filed. The first paragraph was in denial. The second alleged performance on the part of appellant, and a failure to comply with the agreement by appellees. A counter claim was also set up for the $50 paid on the contract. The reply was in denial of this paragraph of the answer.

The issues were submitted to the court for trial, and a finding was had for the appellees. A motion for a new trial was overruled, and judgment upon the finding.

The appellant rests his right to a reversal of the judgment upon the following grounds:

1. That the contract sued on is for the sale and delivery of hogs owned by the appellees at the time of the making of the contract, and the evidence shows that the hogs tendered were purchased by the appellees to fill said contract, after the same had been made.

2. That the evidence shows that a part of said hogs never were, in fact, the property of appellees.

In support of the first position, we are cited to the cases of *Alexander* v. *Dunn*, 5 Ind. R. 122, and *Daggy* v. *Cox*, 19 *id*. 142.

The appellees, with much earnestness, deny the correctness of the legal conclusions arrived at in those decisions, and insist "that they have neither the prestige of judicial precedent, the merit of commercial expediency, nor the force of acknowledged authority, to vindicate them." If

this be true, we are unwilling to rest upon their authority, in the determination of the case now under consideration.

The contract upon which the suit was instituted, in the case of *Alexander* v. *Dunn*, was as follows: "We this day agree to receive from *Samuel T. Dunn*, between fifty-five and seventy pork hogs, to be delivered to us in our pork house in *Gosport*, net. Said hogs to be delivered in the month of *December* next. The money to be paid on the delivery of the hogs."

This language is used by the court in construing the contract: "It is well settled that *Dunn* could not purchase hogs to fill the contract. The hogs purchased by *Alexander* were the hogs owned by *Dunn* at the time the contract was made. If *Dunn* did not then own a sufficient number which could, at the time for delivery, be made to meet the average weight required, *Alexander* was released. *Mason* v. *Cowan's Administrator*, 1 B. Mon. 7."

This is the only authority cited in support of the construction placed upon the contract, and as no principle of law is stated, nor any special words used in the contract referred to, as authorizing such a construction, we must look to the authority cited to sustain it, and if not supported by that case, seek some rule of law on which to rest the decision.

The contract in the case of *Mason* v. *Cowan's Administrator*, *supra*, read thus: "This writing is to show that *James T. Mason* has bought of *William C. Cowan*, all the hogs that he may have for market next fall, to be delivered about the 10th or 25th of *October*. The lot of hogs are to average 250 pounds, and be in number about one hundred, more or less, at the price of $5 per 100 pounds gross, payable in ninety days," &c.

In giving construction to this contract, the court looked into the evidence and sought for the intention of the parties. It was said, in the opinion, speaking of the parties, "They were neighbors, *Cowan* was a hog *raiser*, and it does not appear that he was in the habit of buying fattened

hogs to sell on speculation." And, again, "This interpretation of the contract is fortified by the fact that the parties themselves so understood it, as appears from their meeting and commencing the weighing of *Cowan's* stock of hogs, on the 17th or 18th of *October.*"

But peculiar emphasis was placed by the court upon the fact that a different construction of the contract, than the one adopted, would have destroyed all mutuality of obligation between the parties. One would have been obliged to purchase at the option of the other, who could not himself be compelled to sell. In the language of the court, "If *Cowan* could purchase hogs fattened by others, had the price risen to $6 he could have sold out, and then he would have had no hogs for market at the time agreed upon, and could have escaped from all responsibility on the contract."

It is evident that the court did not decide the case upon any principle which would require that all contracts for a future delivery of hogs, no matter in what terms expressed, should be for all time construed as a present sale and transfer of property, to be satisfied only by the delivery of the identical hogs then owned by the party contracting to sell. But that looking at the intention and understanding of both parties, as disclosed by the evidence, and at the peculiar terms of the contract before them, for the purpose of giving effect to it as a contract, and to render it mutually obligatory upon the contracting parties, they placed that construction upon it.

Such, at all events, seems to have been the view taken of this authority by the same court in a case decided some thirty years later, where the contract, if not substantially the same as the one ruled upon in *Alexander* v. *Dunn, supra,* certainly more nearly resembled it than the one cited to support that ruling. In the case of *White* v. *Booker,* 4 Met. Ky. R. 267, the court placed a construction upon the contract set forth in the opinion. "After reciting that *Booker* had bought of *White* one hundred hogs, of a certain description, to be delivered at the time, place and price specified,

the agreement stipulates that '*Booker* feeds and returns him, *White*, two hundred and fifty hogs, no hog to weigh less than 220 pounds, and each and every hog to be well fatted, and no sow with .pig, and to average 300 pounds gross.' Now, if *Booker* had ready for delivery, at the time and place specified, the two hundred and fifty hogs, coming up in all respects to the description contained in the writing, *it would hardly be rational to assume* that whether they were fed by *Booker*, or another, was, or could be, a matter of the slightest concern to the purchaser. This court, at least, could not presume that the market value of two hundred and fifty hogs, averaging 300 pounds, and well fattened, could greatly, or at all, depend on 'the attention, experience and skill' which may have been displayed in fattening them. We think it clear, therefore, that the recital or stipulation that '*Booker feeds*,' was immaterial, and formed no part of the essence or substance of the agreement in the estimation of the parties themselves."

So far from regarding themselves as controlled by the earlier ruling in the case of *Mason* v. *Cowan's Administrator*, *supra*, the Court of Appeals of *Kentucky* made no citation of it; and in this they were clearly right, for neither from similarity of the terms of the contract, nor from the reasoning of the court, could it have any relevancy to either the case of *White* v. *Booker*, considered by that court, or to *Alexander* v. *Dunn*, which our own court chose to rest alone upon the authority of that decision.

On the other hand, the reasoning of the court in the case of *White* v. *Booker* is fatal to the ruling in the case of *Alexander* v. *Dunn*, unsupported as that case stands, either by authority, by any act or circumstance indicative of the intention of the parties, or by a reasonable interpretation of the contract from its terms.

There was nothing in that contract from which a present sale could be inferred. "We this day agree to receive from *Samuel. T. Dunn*, between fifty-five and seventy pork hogs, * * * to be delivered in the month of *De-*

*ccmber* next. The money to be paid on the delivery of the hogs. The hogs are all to average 200 pounds." If this contract is held to be a present sale of the hogs, then the title to them vested at once in the purchaser, and *Dunn* was simply employed to fatten them. If he failed to have them in proper condition, at the time stipulated, *Alexander* could replevy the hogs, and maintain an action upon the contract against *Dunn*, for his failure to fatten them. And yet, there is no sufficient identification of the property sold to enable a party to sustain an action of replevin, and therefore the contract would fail for uncertainty. It is not the province of a court to force a construction upon a contract which must of necessity render it void, unless no other reasonable construction can, by legal rules, be given to it, that will render it effective. If the contract be construed as one for the future sale and delivery of hogs of a certain weight, quality and number, then effect can be given to it. And what principle of law forbids such an interpretation from being placed upon the agreement?

Are we to hold that contracts for the future sale and delivery of goods, not in the possession of the vendor, are illegal? This would be a doctrine far in advance of that announced in the case of *Bryan* v. *Lewis*, R. & M. 386. The doctrine, or rather dictum, for the case went off on a question of agency, was announced by ABBOTT, C. J., as follows: "I am clearly of opinion that this action cannot be maintained. I have always thought, and shall continue to think until I am told by the House of Lords that I am wrong, that if a man sells goods to be delivered on a future day, and neither has the goods at the time, nor has entered into any prior contract to buy them, nor has any reasonable expectation of receiving them by consignment, but means to go into the market and buy the goods which he has contracted to deliver, he cannot maintain an action on such contract. Such a contract amounts, on the part of the

vendor, to a wager on the price of the commodity, and is attended with the most mischievous consequences."

But even this opinion, never followed by any court in *England* or *America*, but criticised, questioned and finally overruled, cannot be quoted to sustain the case of *Alexander* v. *Dunn*. The evidence on the trial of that case, that *Alexander* had notified *Dunn* that he would not permit him to buy other hogs to fill the contract, is scarcely sufficient to authorize the court to arrive at the conclusion that *Dunn* "had not entered into any prior contract to buy them, and had no reasonable expectation of receiving them by consignment." Nor are we prepared to admit that any evidence of the intention of the parties could have authorized the court to hold that by the terms of the contract a particular lot of hogs was intended, or hogs then the property of *Dunn*. The rule of interpretation is thus stated by Lord Chief Baron EYRE, in his opinion given to the House of Lords, in the case of *Gibson* v. *Minet*, 1 H. Bl. 569: "All latitude of construction must submit to this restriction, namely, *that the words may bear the sense* which by construction is put upon them." For, as Mr. *Parsons* states in his work on contracts, "The rules of law, as well as the rules of language, may interfere to prevent a construction in accordance with the intent of the parties." 1 Parsons on Contracts 10.

The ruling of the *English* courts has, however, put at rest the doctrine announced in *Bryan* v. *Lewis*, *supra*.

The following is the language of the *English* Judges PARKE and ALDERSON, in the case of *Hibblewhite* v. *McMorine*, (*Meeson & Welsby*,) 5 Exch. R. 462.

PARKE, B., says: "I have always entertained considerable doubt as to the correctness of Lord TENTERDEN's doctrine in *Bryan* v. *Lewis*; it excited a good deal of surprise in my mind at the time, and when examined I think it is untenable. I cannot see what principle of law is at all affected by a man's being allowed to contract for the sale of goods of which he has not possession at the time of the

bargain, and has no reasonable expectation of receiving. Such a contract does not amount to a wager, inasmuch as both the contracting parties are not cognizant of the fact that the goods are not in the vendor's possession. And even if it were a wager, it is not illegal, because it has no necessary tendency to injure third parties. There is no indication in any of the books of such a doctrine having ever been promulgated from the bench, and there is no case which has been since decided on that authority. Not only, then, was the doubt expressed by BOSANQUET, J., in *Wills* v. *Porter*, well founded, but the doctrine is clearly contrary to law."

ALDERSON, B., says: "I am of the same opinion. I think the doctrine of Lord TENTERDEN cannot be supported. There is no principle in its favor. It would put an end to half the contracts made in the course of trade. Suppose a vendor makes a contract for the delivery of goods, which may be performed by the delivery of any goods of the kind bargained for, whether he has them in his possession at the time of the contract, or not, can make no material difference, if he has them ready to be delivered at the time when the contract is to be fulfilled."

Our own court has recognized the authority of this decision, and referred to it as sustaining the ruling that a vendor might bargain for a future sale of lands to which he had no title at the time. *Wright* v. *Blachley*, 3 Ind. 101.

The courts of *New York* have fully recognized this doctrine. It is said, in the case of *Stanton* v. *Small*, 3 Sandford's N. Y. Sup. Court R., 230, "But it is now well established that a contract for the sale of goods, to be delivered at a future day, is not invalidated by the circumstance that at the time of the contract the vendor neither has the goods in possession, nor has entered into any contract to buy them, nor has any reasonable expectation of becoming possessed of them by the time appointed for the delivery of them, otherwise than by purchasing them after the con-

tract." We refer also to Cassard v. Hinman, 1 Bos-
worth's N. Y. Superior Court R. 207, where it is laid down
that, "A contract for the sale and delivery of goods on a
future day is valid in law, although the goods, at the date
of the contract, are not in the possession nor within the
control of the seller. But if it was the intention and
understanding of the parties when it was made that the
goods should not be delivered, but that the difference
between the market price on the day of delivery and that
stipulated in the contract should be paid by one of the
parties to the other, according as the market price might
exceed or fall short of that stipulated, the contract is not
a legitimate mercantile speculation, but is a mere wager,
and as such is void under the 8th section of the act on
'Betting and Gaming.' Whether such was the intention
of the parties is a question of fact."

Mr. Parsons, in his work on contracts, vol. 1 p. 523, 5th
ed., commenting on the English decision of Bryan v. Lewis,
says: "Although this, the decision, is questioned, such a
contract, if enforcible, as by the later authority and better rea-
son it seems to be, must certainly be regarded as a contract
for a future sale, and not as a present contract of sale; and
therefore the property in the thing, when it is acquired by
the proposed vendor, does not pass at once to the proposed
vendee, until the actual sale be made."

The only ground, then, upon which the decision in Alex-
ander v. Dunn can be maintained, is that the contract was
for the future sale and delivery of the identical hogs then
owned by Dunn. The language is simply for the reception
of between fifty-five and seventy pork hogs, to average 200
pounds net. There is no attempt to designate or identify
any particular lot of hogs. Nor does the language of the
contract contain a single word to indicate that the hogs
to be delivered were then owned by Dunn.

In the case of Bales v. Weddle, 14 Ind. 349, Mr. Justice
WORDEN, in delivering the opinion of the court, uses this
language: "A distinction may be taken between contracts

by which one person agrees to sell to another, at a future day, property not professed to be then owned by the seller; and those contracts which purport to sell property then owned by the seller, to be delivered on a future day. Perhaps the one class of contracts might be good, and the other void, where the property, the subject of the contract, was not owned by the vendor, at the time of the contract."

The same judge, in delivering the opinion in the case of *Davis* v. *Murphy*, 14 Ind. 158, cites, as expressing the law, the following passage from Addison on Contracts, p. 228: "When a sale is of particular classes and descriptions of goods, generally, to be selected by the vendor, such as a sale of so many measures of corn, wine, oil or fruit, and not of any specific ascertained parcel of goods, the vendor will fulfill his contract by furnishing any goods fairly answering the description given by him. When, on the other hand, the precise article intended to be bought and sold was ascertained and identified at the time of the making of the bargain, the vendor must deliver the identical thing so fixed upon and ascertained, and cannot fulfill his contract by tendering and delivering anything else of corresponding nature."

These authorities may well be regarded, the one as questioning, the other as overruling, the case of *Alexander* v. *Dunn*. This court, however, in the later case of *Daggy* v. *Cox*, 19 Ind. 142, again cites the decision in 5 Ind. as authority. The language of the contract there, was: "Said hogs to be well fatted, and in merchantable condition; said hogs to be weighed between the 20th of *November* and 20th of *December*; said hogs to be *our best hogs*, weighing two hundred pounds and upwards." Had the decision rested alone upon the words "*to be our best hogs,* weighing two hundred pounds," it should pass unquestioned, though a doubt might arise in some minds whether the words did not point to the ownership, as well as the weight, at the time of delivery, rather than to the ownership at the time of the contract.

In a still later case, in the same volume of reports, *Murphy et al.* v. *Toner*, 228, the court, while they refer to the case last cited, expressly decline to rest the decision upon the construction given in *Daggy* v. *Cox*, which followed the authority of *Alexander* v. *Dunn*. And again, in *Lowry* v. *Cooper*, the judge who delivered the opinion uses this language, in referring to the case of *Alexander* v. *Dunn*: "The writer of this opinion entertains serious doubts in regard to the correctness of the opinion pronounced in that case." It thus appears that three of the late judges of this court either questioned, or declined to rest their decisions upon, the authority of the case in 5 Ind.

We therefore feel, in overruling that case, and so far as the case of *Daggy* v. *Cox* rests upon its authority, that decision also, that while declaring the law, as we understand it, we have disregarded a decision which was received by the legal profession of this State with great doubt, and was never consistently followed by this court since it was pronounced.

We regard the law as cited from Addison on Contracts, *supra*, by this court, in the case of *Davis* v. *Murphy*, 14 Ind. 158, as the correct rule in the construction of contracts of this nature.

The second point presented by the appellant is, "That the evidence shows that a part of said hogs never were the property of the appellees." This was a question of fact. If the evidence introduced by the appellees was true, the hogs, for the purposes of the tender and delivery, were their property.

The finding is not so clearly against the evidence that it can be questioned in this court.

The judgment is affirmed, with costs.

*T. W. Woollen* and *C. Byfield*, for appellant.

*Overstreet & Hunter*, and *M. M. Ray*, for appellees.