### SIEVEKING and Another *v.* LITZLER.

SALE.—*Rescission.*—Suit by the buyer to rescind an executed contract for the sale of one-half of a portable ·mill.

*Held*, that an averment that the seller never intended that the buyer should derive any benefit from the mill, or exercise any control over it, could add no force to the complaint.

*Held*, also, that the fact that after the sale was completed the buyer was not permitted to collect money or examine the books, could not entitle him to rescind the contract.

SAME.—*Misrepresentation.*— *Value.*—A misrepresentation by the seller as to the value of the article offered for sale is not available to rescind the contract; but where a fact is stated falsely which goes to make up the value (as the number of feet of lumber a portable saw-mill can saw in a day), and which is peculiarly within the knowledge of the seller, upon the seller's

statement of which the buyer can rely without negligence, the false statement may constitute a ground for rescission.

SAME.—If the buyer relies upon a statement of the seller that the former will make a good and profitable trade by the purchase, it is the buyer's own folly.

SAME.—*Promise.*—The failure of the seller to keep a mere promise, to be performed after the sale is complete, is not a ground for rescission.

SAME.—*Fraud.—Diligence.*—The party claiming to rescind a contract of sale on account of fraud must act at once upon discovery of the fraud; and he cannot postpone discovery by neglect to use ordinary diligence. This rule must be strictly enforced where the law affords a complete remedy in damages.

SAME.—*Injury*—To authorize a rescission of a contract of sale on the ground of fraud, there must be an injury shown as the result or that fraud.

APPEAL from the Vanderburg Common Pleas.

RAY, J.—This was an action to rescind a contract for the purchase by the appellee of one-half interest in a portable saw-mill.

A demurrer was filed to the amended complaint, which was overruled; and this is presented as error in this court. As the appellee denies the accuracy of the abstract filed by the appellant, we have used the one furnished by himself.

The complaint charges, that the appellant, Sieveking, wilily contriving and intending to cheat and defraud the appellee out of his tract of land, hired one John Wall, a sawyer, at the price of one hundred dollars, to assist him in the perpetration of the fraud; that, in pursuance of his fraudulent design, on the 14th of March, 1867, he and the said Wall, the sawyer, by misrepresentation, falsehood, and fraud, succeeded in putting upon the appellee the one-half of a portable saw-mill and two log-wagons, at a price of $2,225; that Sieveking received in payment from the appellee, two promissory notes, one for $725, secured by mortgage on the one-half of the saw-mill and two log-wagons, and the other for $1,500, secured by mortgage on the appellee's tract of land. It is averred that the appellee was ignorant of the value, capacities, and uses of saw-mills and machinery; that he was ignorant of business and the manner of transacting the same; that he was weak of intellect and

mind; that Sieveking, well knowing the appellee's ignorance in such matters, and his weakness of intellect, assisted by said Wall, the sawyer, falsely and fraudulently represented to the appellee that said mill could cut on an average eight thousand feet of lumber per day; that Wall, the sawyer, could and would go with and attend said mill; that Sieveking then had contracts at Poseyville, Indiana, for the cutting of one million feet of lumber, and that he had contracts at Blairsville, Indiana, for the cutting of another million feet; that boarding could be had at both Poseyville and Blairsville for three dollars per week; that Sieveking could and would, within two weeks, bring the mill out to the points at which he had the contracts for cutting the lumber; that one-half the saw-mill was well worth twenty-five hundred dollars; that the appellee would make a good and profitable trade by buying one-half of the saw-mill, the log-wagons, and the contracts. It is averred, that the appellee, confiding in the truth of the representations of Sieveking and Wall, was induced to make the purchase, and to execute the said notes and mortgages; that each and every one of said representations was false, in this, that the said mill could not cut on an average eight thousand feet of lumber per day; on the contrary, it could only cut about four thousand feet per day; that the said Sieveking had no contracts, whatever, for cutting lumber at Poseyville, Indiana; that he did not have contracts at Blairsville for the cutting of one million feet; on the contrary, his contracts were for eighty thousand feet only; that Wall did not go with or attend the mill, but was prevented from so doing by Sieveking; that boarding could not be had at either Poseyville or Blairsville for three dollars per week, or for less than four dollars; that Sieveking did not bring the mill out until two months had expired; that one-half the mill was not worth twenty-five hundred dollars, nor was the entire mill and two log-wagons worth exceeding three thousand dollars. It is averred, that Sieveking never intended that the appellee should derive any benefit from, or exercise any control over, the mill; that he

would not, after the mill had been brought out, permit the appellee to examine any of the books, contracts, or accounts, nor would he allow the appellee to collect or receive any of the money arising from the operations of the mill; that he forbade the sawyer and the employees from making any communications whatever to the appellee concerning the mill and business; that Sieveking had the full and exclusive control of the mill and two log-wagons from the date of the sale and purchase up to the time of bringing the suit; and that he had received and appropriated all the moneys arising from the mill and business, excepting five dollars which the appellee collected and paid to one of the employees of the mill. It is alleged, that the appellee, as soon as he had fully discovered the fraud which had been practiced upon him, to wit, in July, 1867, tendered the five dollars to the appellant Sieveking, and offered to rescind the contract *in toto*, and demanded the cancellation of the notes and mortgages, but that Sieveking refused. It is also averred, that the defendant Schellhaus had some kind of a claim to the mortgage on the tract of land, claiming under an assignment from Sieveking. Issues were made, a jury was waived, and a trial was had before the court.

There are many averments which cannot be regarded as adding any force to the complaint for rescission. Thus, it is alleged, "that Sieveking never intended that the appellee should derive any benefit from, or exercise any control over the mill." In the case of *Hemingway* v. *Hamilton*, 4 M. & W. 115, Lord ABINGER said: "Suppose a man contracts in writing to sell goods at a certain price, and afterwards delivers them, could the buyer plead that at the time of the contract the seller fraudulently intended not to deliver them, but to dispose of them otherwise?" If the sale was completed, the purchaser could not be prevented from deriving profit and exercising control over the mill by an intention existing in the mind of the seller at the time of the contract. There is no averment that the appellee was actually prevented by Sieveking from exercising the

control of the mill to which his purchase of a half interest entitled him.

The fact that after the purchase was completed the appellee was not permitted to collect money or examine the books, may have furnished ground for the dissolution of the partnership or the aid of a court in exercising his rights, but could not entitle him to go back and rescind an executed contract. So, also, as to the averment of the value of the mill. This is but matter of opinion, and not available for the purpose of rescission. Where facts peculiarly within the knowledge of the seller, upon which the purchaser may rely without the charge of negligence, are stated falsely, which go to make up the value, there, they may constitute a ground for rescission; as in the case of *Shaeffer* v. *Sleade,* 7 Blackf. 178, where suit was brought upon a mortgage given for part of the purchase money for certain figures representing the signers of the Declaration of Independence. In that case, although the judgment allowed simply for a partial failure of consideration, yet the court did not regard the statement of value as material, but stated the question to be, "whether there were such false and fraudulent representations as to the durability of the figures, and as to the profits derived from their exhibition, as to impose upon the purchaser and induce him to make the contract set out in the bill." See, also, *Sandford* v. *Handy,* 23 Wend. 260; *Foley* v. *Cowgill,* 5 Blackf. 18.

Those were facts going to make up the value, and if falsely stated afforded ground of relief, as, in this case, the capacity of the mill to saw eight thousand feet of lumber per day is material in fixing the value of the mill.

The statement by Sieveking, that appellee would make a good and profitable trade by the purchase, is a mere expression of opinion, "and if any one relies on mere opinion, instead of ascertaining facts, it is his own folly." 2 Par. Con. 778.

There are also averments in the complaint which amount

to simple promises; as, that Sieveking could and would within two weeks bring the mill out to the points at which he had the contracts for cutting the lumber. The complaint does not deny that Sieveking could do this, but complains that he failed to keep the promise to be performed two weeks after the sale was complete. It is also alleged, that he failed to bring the mill out for two months; but if this had been a ground for rescission, it should have been acted upon. The appellee would have waived this delay by not rescinding at once for that reason. He remained the joint owner for at least two months after this delay. In *Hunt* v. *Silk*, 5 East. 449, it is said: "If the plaintiff might occupy the premises two days beyond the time when the repairs were to have been done and the lease executed, and yet rescind the contract, why might he not rescind it after a twelve month on the same account? This objection cannot be gotten rid of; the parties cannot be put in *statu quo;*" and in *Campbell* v. *Fleming*, 1 A. & E. 40, it was held, that if a party be induced to purchase an article by fraudulent representations, and after discovering the fraud continue to deal with it as his own, he cannot recover back the money from the seller; and, *semble,* that the right to repudiate the contract is not afterwards revived by the discovery of another incident in the same fraud.

The allegation that the mill was represented to cut eight thousand feet of lumber per day, when in fact it would only cut four thousand, is material; and the only question is, has the appellee used proper diligence in discovering this fact? As a joint owner, was he authorized to go forward for four months at least without informing himself as to the ability of the mill? One of the most clearly established rules in this class of cases is, that the party claiming to rescind on account of fraud must act at once on discovery of the fraud; and he cannot postpone discovery by neglect to use ordinary diligence. This rule should be strictly enforced where, as in this case, the law affords a complete remedy in damages, and he can make the defense of partial failure of

consideration when suit is brought on the notes. No excuse is offered for the delay. He does not deny that he could immediately have satisfied himself of the capacity of the mill; and if he failed to do so, he is chargeable with knowledge. The question of time must be determined by each contract, but in all cases there must be reasonable care, and if upon the exercise of such care the fraud would appear, the party must be held to prompt action. We think the complaint should have excused the want of discovery of this fraud at an earlier date, under the circumstances of this case.

There remain the averments, that Sieveking represented that he had contracts at Poseyville for the cutting of one million feet of lumber, and at Blairsville for another million feet, and that board was only three dollars per week. It is averred, that there was no contract at Poseyville, and at Blairsville a contract only for eighty thousand feet of lumber. But there is no averment that the mill has not been constantly employed on contracts of equal value, or that the appellee has ever suffered any damage from the failure to fill such contracts. To authorize a rescission on the ground of fraud, there must be an injury shown as the result of that fraud. It would seem almost out of place to cite authority to sustain so plain a proposition of law, but the averments in this complaint having been held sufficient by the court below, we refer to a text book, 2 Par. Con. 772. See, also, *Fuller* v. *Hodgdon*, 25 Maine, 243.

The demurrer should have been sustained to the complaint.

On the trial, resulting in a finding for appellee, there was a failure to prove the averment of the representation having been made, that the mill would saw eight thousand feet of lumber per day—in fact, an entire failure by the appellee to make any case for rescission.

Judgment accordingly reversed, with costs, and the court below directed to sustain a demurrer to the amended complaint.

*C. Denby* and *P. Maier*, for appellants.

*J. M. Shackelford*, for appellee.