## Yost *v.* McCarty

[No. 18,334. Filed November 20, 1952. Rehearing denied December 19, 1952. Transfer denied March 5, 1953.]

*Milford M. Miller* and *William C. Welborn,* both of Evansville, for appellant.

*Henry B. Walker* and *Henry B. Walker, Jr., Clay Ulen* and *Robert D. Londergan,* all of Evansville, for appellee.

ROYSE, P. J.—On or about November 30, 1945, the appellant herein was the President of Ken Standard Corporation, an Indiana corporation, and the owner of a majority of its capital stock. Appellee was an employee of this Corporation and acted as its secretary. On said date the parties entered into a parol agreement, by the terms of which appellant agreed to sell from his stock in said Corporation shares of said stock equal to five per cent of the common capital stock of said Corporation for an agreed price of $3.40 per share. This oral agreement between these parties was subsequently reduced to writing. The pertinent portions of this agreement are as follows:

"WHEREAS at the time of the incorporation of Ken Standard Corporation, to-wit: November 30, 1945, it was agreed by parol by and between the parties hereto that the Party of the First Part would cause to be transferred from his own outstanding shares of the stock of the Ken Standard Corporation a number of shares equal to five per cent (5%) of the common capital stock issued and outstanding, and

"WHEREAS it was in said agreement determined by the Parties hereto that the book value of the said stock, to-wit: Three Dollars and forty cents ($3.40) per share, should be the purchase price of the said stock to the Party of the Second Part, and

"WHEREAS thereafter eight thousand five hundred (8,500) shares of the common capital stock of the Ken Standard Corporation was issued to the Party of the First Part by the corporation for value received, and

"WHEREAS during all of said period it has been the understanding and agreement of the parties hereto that subject to the conditions hereinafter set out and it has become and is desirable to reduce the said parol agreement to writing: NOW THEREFORE THIS AGREEMENT IS TO EVIDENCE:

"1. That the party of the First Part will from time to time cause to be transferred on the books of the corporation to the Party of the Second Part, subject to the conditions hereinbefore and hereinafter set out, four hundred twenty-five (425) shares of the common capital stock of the Ken Standard Corporation owned by and held by the Party of the First Part.

"2. That the Party of the Second Part will pay upon the purchase price of the said stock at three Dollars and forty cents ($3.40) per share a sum and amount equal to the bonus as received each year by the Party of the Second Part as an employee and officer of the Ken Standard Corporation, and cause the same to be made and paid to the Party of the First Part, and the Party of the First Part agrees to transfer, assign and set over to said Party of the Second Part the number of shares so paid for by at the same rate of Three Dollars and forty cents ($3.40) per share.

"3. That the Party of the Second Part will remain with and faithfully perform her duties as assigned to her by the Ken Standard Corporation to the end that the business of the said corporation shall prosper and its affairs be conducted successfully and for the benefit of all parties concerned.

"4. It is further understood and agreed by the Parties hereto that should the Party of the Second Part cease to be and remain an employee of the Ken Standard Corporation, before the payment in full of the said purchase price, this contract shall become null and void at the option of the Party of the First Part, it being the intent and purpose of the said sale and transfer of the said stock that the said Party of the Second Part will remain with and render service to make the said Ken Standard Corporation efficient in operation and successful in the conduct of its business.

"5. It is further agreed by and between the Parties hereto that should the Party of the Second Part cease to be an employee of the Ken Standard Corporation within the meaning and intent of this contract and agreement, then there shall be issued to her such pro rata part of the said four hundred twenty-five (425) shares of the common capital stock of the said corporation as shall have been paid for at the said price of Three Dollars and forty cents ($3.40) per share, or in lieu thereof, if said stock or any part thereof is not made over and transferred in absolute ownership to the Party of the Second Part, the Party of the First Part, his heirs, successors, or assigns, shall repay to the Party of the Second Part all of said sums paid the Party of the First Part by the Party of the Second Part for the said stock of the Ken Standard Corporation.

"6. It is further agreed by and between the parties hereto that this agreement shall enure to and be for the benefit of and bind the parties only, and their respective heirs, and personal representatives, and shall not be transferable without the consent of the Party of the First Part.

"IN WITNESS WHEREOF, we have hereunto set out (sic) hands and seals this 11th day of March, 1948.

"/s/ Clyde E. Yost
"Party of the First Part

"/s/ Margaret E. McCarty
"Party of the Second Part"

In April, 1950, appellee brought this action against appellant for money had and received. Her complaint, in substance, avers she paid appellant, in 1946, $179.88, and in 1947, $292.69, pursuant to the terms of said contract; that appellant did not, and refused to, cause the shares of stock to be issued to her; that he received said sums of money for her use and benefit; that said sums are due her and unpaid. Wherefore, she prays for judgment for $600. Appellant's demurrer to this complaint was overruled. Thereafter, appellant filed an answer in abatement and to the jurisdiction of the court. Appellee's demurrer to this pleading was sustained. Appellant then filed an answer under the rules. Trial to the court resulted in finding and judgment in favor of appellee against appellant for $472.77.

The assignment of error here is that the trial court erred in overruling appellant's demurrer to the complaint, in sustaining appellee's demurrer to the plea in abatement, and in overruling appellant's motion for new trial.

Appellant first contends the trial court erred in overruling his demurrer to the complaint because there is no allegation that appellee performed her part of the agreement sued upon. There might be merit to this contention if this were a suit on the contract between the parties. However, in our opinion, the complaint herein stated an action for money had and received. It averred appellee had performed a substantial part of her obligations under the contract and that appellant refused to perform any part of his obligations thereunder. Under these circumstances appellee had a right to consider the contract rescinded and to demand restitution of the money paid appellant. *Bales* v. *Weddle* (1860), 14 Ind. 349, 350; *Indiana Business College* v. *Cline* (1918), 187 Ind. 416, 419, 119 N. E.

712; Restatement of the Law of Contracts, §§347, 348, 384. The court did not err in overruling appellant's demurrer to the complaint.

After this action of the trial court appellant filed his answer in abatement and to the jurisdiction of the court. This answer set up the Ken Standard Corporation was an Indiana Corporation and subject to the process of the court, and that said corporation was a necessary party to this action. It then averred the said corporation, on the 21st day of February, 1948, adopted the following resolution:

"BE IT FURTHER RESOLVED that the Board of Directors recommends that a bonus equal to two per cent (2%) of the net profits of the corporation for each calendar year that Margaret E. McCarty is employed by the company, shall be set aside out of net earnings before the payment of Federal Income Tax, and be credited to the account of said Margaret E. McCarty until the total payment of additional salary by way of bonus shall have reached the total sum and amount of One Thousand Four Hundred Forty-five Dollars ($1,445.00)."

Appellee's demurrer was on the grounds the answer did not state facts sufficient to abate the action. In her memorandum in support of the demurrer, appellee states the answer on its face shows the corporation is a stranger to the contract between the parties out of which arose the transactions which give rise to this action.

Appellant contends the resolutions of the Board of Directors of Ken Standard Corporation and the contract sued upon are so connected, related and interlocked that the corporation is a necessary party defendant in order to completely determine the controversy. We cannot agree with this contention of appellant. The contract between the parties herein

was originally a parol agreement entered into November 30, 1945. This was more than two years before the resolution was adopted by the Board of Directors of Ken Standard Corporation. The contract between the parties, in our opinion, gave appellee the right to purchase 425 shares of the stock of the corporation at a price of $3.40 per share. She could purchase this outright regardless of the payment of a bonus by the corporation. On the other hand, under the terms of the contract she was required to apply any bonus paid her by the Corporation to the purchase of the stock until the 425 shares were fully paid for. Her complaint avers she made payments in 1946 and 1947, and that appellant received said sums for that purpose and refused to transfer and assign to her the shares of stock to which she was entitled under the contract. It is to be noted the first of these payments was made before the resolution of the Board was adopted. In our opinion the contract sued upon in this action was an agreement solely between the parties hereto. The corporation was not a party to it and could not be bound by its terms. Therefore, the trial court did not err in sustaining appellee's demurrer to the answer in abatement.

The specifications in the motion for a new trial allege error in the assessment of the amount of recovery, in this, that the amount is too large; the decision is not sustained by sufficient evidence and is contrary to law. Appellant asserts that substantially the same question is raised by each of these specifications, and therefore groups them together in the argument portion of his brief.

Appellant contends there was no evidence of payment of $179.88 by appellee to appellant. There was no evidence she paid upon the purchase price of any of appellant's stock a sum and amount equal to the bonus

received by appellee in 1946. There was no evidence appellee performed her part of the agreement sued upon. The bonus check of $179.88 payable to appellee was not endorsed by her. Appellee refused to endorse the check unless appellant delivered the stock. He asserts, therefore, this check was not a payment to him under the stock purchase contract. In support of this contention appellant cites the cases of *Farmers National Bank of Remington* v. *Rottger, Receiver* (1935), 209 Ind. 632, 200 N. E. 246; *Karvalsky* v. *Becker et al.* (1940), 217 Ind. 524, 29 N. E. 2d 560, 131 A. L. R. 1074; *Kinder* v. *Fishers National Bank* (1931), 93 Ind. App. 213, 177 N. E. 904; *Hulman & Company* v. *Ginnicks* (1935), 100 Ind. App. 99, 194 N. E. 489. In our opinion, those cases throw no light on the question before us in this case.

Considering the evidence most favorable to appellee, the record discloses that on or about March 15, 1947, appellant brought to appellee at her desk in the office of the Corporation, a check of that Corporation for $179.88 signed by appellant as President thereof, and requested her to endorse the check. This was for a bonus for the year 1946. Appellee told appellant she would endorse the check when he delivered to her a certificate for the stock it would purchase pursuant to their agreement. Appellant assured her he would have the transfer made and took the check from her. On several occasions thereafter appellee demanded that appellant give her the stock. Appellant, in response to these demands, asserted he would cause the transfer to be made later. He never told her the transfer was not made because he had not been paid therefor. Appellant admitted that he tore the signature off this check sometime after appellee refused to endorse it. He said it was carried on the books of the Corpora-

tion as an outstanding check until a short time prior to March, 1948, when he wrote across the face of it "void". This check was never paid by the Corporation. There were sufficient funds in the bank to pay it.

Upon the foregoing facts it seems to us that appellee transferred the check for $179.88 to appellant.

Section 19-320, Burns' 1950 Replacement, provides as follows:

> "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer, But, for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

See also: Ogden, Negotiable Instruments, p. 193, §126; 87 A. L. R. Annotations, pp. 1179, et seq. He at least had an equitable title to whatever title she had in this check. 10 C. J. S. p. 723, §232. Appellant could have at any time effected the negotiation of the check by paying the consideration—transfer of the stock—for which it was given to him. He chose not to do this. He retained the check and eventually destroyed it as a negotiable instrument. By such conduct he prevented appellee from receiving either the stock or the money to which she was entitled. The fact that he did not receive the money which the check called for was no fault of appellee.

For the purpose of illustrating our concept of this transaction, assume appellee had cashed the check and turned over to appellant the proceeds thereof in cash; then appellant destroyed or lost the cash. Surely it could not then be argued that if appel-

lant refused to transfer the stock appellee could not recover the amount she paid him.

It is undisputed that the check for $292.69 was endorsed by appellee and cashed by appellant.

Finally, it is disclosed by the record that appellee became ill in the latter part of 1948 and had to undergo two operations. By reason of this illness she was unable to return to work for the Corporation. More than a year elapsed after she severed her connections with the Corporation before she brought this action. In the interval appellant did not cause the transfer of the stock for which she had paid, nor did he repay the money she had paid him as required by Provision 5 of the contract.

Finding no error, the judgment is affirmed.

NOTE.—Reported in 108 N. E. 2d 718.