BARRINGTON MANAGEMENT CO., INC., Richard P. Roethke, and Richard P. Roethke, d/b/a Barrington Investment Company, Inc., Appellants–Defendants,

v.

PAUL E. DRAPER FAMILY LTD. PARTNERSHIP and Paul E. Draper, Appellees–Plaintiffs.

No. 79A02–9705–CV–321.

Court of Appeals of Indiana.

April 30, 1998.

Robert J. Schukit, Stacy L. Hill, Dann Pecar Newman & Kleiman, Indianapolis, for Appellants–Defendants.

Roger W. Bennett, Christine A. DeSanctis, Bennett, Boehning & Clary, Lafayette, for Appellees–Plaintiffs.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants Barrington Management Co., Inc., Richard P. Roethke, and Richard P. Roethke, d/b/a Barrington Investment Company, Inc., ("Buyer"), appeals the trial court's granting of the petition of Appellees–Plaintiffs Paul E. Draper Family LTD. Partnership, and Paul E. Draper, ("Seller"), to rescind a real estate Purchase Agreement. Buyer asserts the trial court erred in denying its counter-claim requesting specific performance of the Purchase Agreement.

In granting rescission, the trial court ruled that Seller could retain Buyer's $1,000.00 earnest money deposit. The trial court also awarded Seller $10,767.00 in attorney fees under the Purchase Agreement.

We reverse and remand with instructions that Seller return the $1,000.00 earnest money deposit to Buyer. We also reverse the award of attorney fees. In all other respects, we affirm.

### Issues

Buyer raises three issues, which we restate and consolidate into the following two issues:

I. Whether the trial court erred in granting Seller's petition to rescind the Purchase Agreement.

II. Whether the Seller, having initiated the present litigation to obtain the remedy of rescission, may retain Buyer's earnest money deposit and recover attorney fees under the contract.

### Facts

The stipulated facts reveal that, on December 8, 1993, the parties entered into a written Purchase Agreement under which Seller agreed to sell a certain parcel of commercial real estate to Buyer. Buyer made a $1,000.00 earnest money deposit. The Purchase Agreement provided that "[t]ime is of the essence of this Contract." An Addendum to the Contract, which included additional terms of the Purchase Agreement, also noted that "[t]ime is important." The closing of the sale was to take place within thirty (30) days after all conditions had been satisfied or waived. The addendum also provided as follows:

4. It is a condition ("Condition # 1") of this offer that all utilities, including but not limited to sanitary sewer, either from the city of West Lafayette or from American Suburban Utilities, Inc. (including line and sewage plant capacity), city water, electric, gas, storm drainage, are available to the Phase I property line and are in an adequate supply and capacity to serve the development of the entire 68 acres.... *Purchaser shall have one hundred eighty (180) days from date of this Purchase Agreement to satisfy or waive this condition.*

. . . .

15. In the event any of the above listed conditions or other condition of this Purchase Agreement are not timely satisfied, Purchaser shall have the right to either waive said conditions and close or to notify Seller of the objections and terminate this Agreement. In the event Purchaser elects to terminate this Agreement, Purchaser shall be entitled to a full and immediate return of the earnest money tendered herewith, and in the event such cancellation notice is paid to the Seller, the Pur-

chase Agreement shall terminate and be considered null and void.

(R. 19, 22–23) (emphasis added). The addendum reiterated that if Condition # 1 was not "timely satisfied or waived by Purchaser, Purchaser may so notify Seller that it terminates this Agreement on account thereof and receive back its earnest money deposit." The Purchase Agreement provided further that:

> If Buyer breaches this Agreement and is in default, Seller may treat this Agreement as being terminated and receive the Earnest Money as liquidated damages. If Seller breaches this Agreement and is in default, then the Earnest Money shall be returned to Buyer. In addition, if Seller is in default, the Buyer may seek specific performance or any other remedy provided by law or equity against the Seller.

(R. 14). The Purchase Agreement also provided:

> Any signatory to this contract who is the prevailing party in any legal or equitable proceeding against any other signatory brought under or with relation to the Contract or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

(R. 14). Finally, the Purchase Agreement contained the following integration clause:

> This Contract constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the transaction and cannot be changed except by their written consent.

(R. 15).

Buyer experienced delays in satisfying "Condition # 1" of the Purchase Agreement; that is, in obtaining the land use and drainage approvals necessary to develop the property. Accordingly, the parties entered into a written agreement which extended the period in which Buyer could satisfy or waive this condition until December 31, 1995. However, Buyer remained unable to obtain the

necessary approvals and requested an additional extension from Seller. (R. 87). Seller refused to grant another extension.

On January 25, 1996, Buyer demanded that Seller close the transaction and forwarded the closing documents. Seller refused to close, and this litigation ensued.

### Procedural History

Seller initiated the present litigation requesting that the parties' real estate Purchase Agreement be rescinded to enable the Seller to sell the real estate to another purchaser. Buyer counterclaimed, requesting specific performance of the Purchase Agreement.

Recognizing that the dispute was largely one of law [1], the parties agreed to submit the case to the trial court for disposition by "summary proceedings." The parties submitted a stipulated statement of facts to the trial court. The trial court considered the stipulated facts, entertained oral arguments, and reviewed legal memoranda submitted by the parties. The trial court entered judgment in favor of Seller granting rescission of the Purchase Agreement, and ruled that Seller could retain the Buyer's $1,000.00 earnest money deposit. In conjunction with its judgment, the trial court entered the following pertinent findings:

> 9. [Buyer] did not secure the necessary land use approval for the development of the ground and the preliminary drainage plan had not been approved as of December 31, 1995, as required by the Purchase Agreement.
>
> . . . .
>
> 11. [Seller] retained ownership of a 12 acre parcel located directly North of and adjacent to the 68 acres which was the subject matter of the Purchase Agreement of the parties.
>
> . . . .
>
> 16. Considering the agreement of the parties in its entirety, the intent of the parties was that the consideration for the Phase I property purchase included not only money, but also the planning and

---

1. Or perhaps more accurately, the dispute was largely one involving well-established principles of equity.

approval of certain improvements which [Seller was] entitled to use free of charge, and which provided benefit to and maintained the value of the property lying with Phases II and III, and enhanced the value of the 12 acres of [land] retained by [Seller].

After this judgment was entered, another hearing was held regarding Seller's request to be awarded reasonable attorney fees as provided under the Purchase Agreement. The trial court awarded Seller $10,767.00 in attorney fees. This appeal followed.

### Discussion and Decision

#### Standard of Review

■ On appeal of a bench decision, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). When the trial court enters findings on its own motion (as in the present case), specific findings control only as to issues they cover while a general judgment standard applies to any issue upon which the court has not found. *Matter of Estate of Burmeister*, 621 N.E.2d 647, 649 (Ind.Ct.App.1993). The reviewing court will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993), *trans. denied.* Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute the basis for reversal even if erroneous. *Williams v. Rogier*, 611 N.E.2d 189, 196 (Ind.Ct.App.1993), *trans. denied; Donavan v. Ivy Knoll Apartments Partnership*, 537 N.E.2d 47, 52 (Ind.Ct.App. 1989).

#### Contract Interpretation Generally

■ We begin our analysis by noting that our supreme court has expressed its commitment to advancing the public policy in favor of enforcing contracts. *See Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995). Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract.

*Id.* Thus, as a general rule, the law allows persons of full age and competent understanding the utmost liberty in contracting; and their contracts, when entered into freely and voluntarily, will be enforced by the courts. *Pigman v. Ameritech Publishing Inc.*, 641 N.E.2d 1026, 1029 (Ind.Ct.App. 1994). Indiana has long adhered to the rule that contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy. *Id.* at 1030.

■ Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. *George S. May International Co. v. King*, 629 N.E.2d 257, 260 (Ind.Ct.App.1994), *trans. denied.* If a contract is ambiguous or uncertain and its meaning is to be determined by extrinsic evidence, its construction is a matter for the fact finder. *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310 (Ind.App.1991), *trans. denied.* If, however, an ambiguity arises because of the language used in the contract and not because of extrinsic facts, its construction is purely a question of law to be determined by the court. *Id.* In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. *Id.* at 1313. The contract is to be read as a whole when trying to ascertain the intent of the parties. *Id.* The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* at 1316. Finally, the court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *Id.*

### I. Enforceability/Viability of Purchase Agreement

#### A. Buyer's Contentions

■ Buyer points out that the Purchase Agreement specifically provided that Buyer could waive all conditions and proceed to closing. Buyer is correct that, even absent specific contractual language, the purchaser

of real property to whom the benefit of a contractual condition precedent inures may waive that condition and demand that the seller perform the contract; and if the seller refuses to close, the purchaser may obtain an order of specific performance from the court. *Donavan,* 537 N.E.2d at 52–54; *Kokomo Veterans, Inc. v. Schick,* 439 N.E.2d 639, 645 (Ind.Ct.App.1982), *trans. denied.* Thus, Buyer reasons that Seller breached the Purchase Agreement by refusing to close the transaction and, therefore, the trial court erred by granting Seller rescission and denying Buyer's application for specific performance.

Buyer also argues that the trial court erred in granting rescission by considering parol evidence in its finding/conclusion that the condition in the Purchase Agreement that Buyer obtain the necessary land use and drainage approvals was a material part of the consideration benefitting Seller which could not be waived by Buyer. (R. 172–73). However, as will be explained below, the trial court's judgment may be affirmed on the basis of its finding that Seller was entitled to rescind the Purchase Agreement upon the failure of a condition subsequent, that is, the expiration of the time allotted for Buyer to satisfy or waive the condition regarding the procurement of necessary land use and drainage approvals. Therefore, the trial court's consideration of parol evidence and its determination that the condition precedent was intended to benefit Seller is mere surplusage upon which reversal cannot be predicated. *See Donavan,* 537 N.E.2d at 52.

### B. Rescission—Time is of the Essence

■ Applications for rescission are addressed to the sound discretion of the trial court. *Hart v. Steel Products, Inc.,* 666 N.E.2d 1270, 1275 (Ind.Ct.App.1996), *trans. denied.* The party seeking to rescind a contract bears the burden of proving his right to rescission and his ability to return any property received under the contract. *Id.* On appeal, however, the party appealing the trial court's grant of rescission has the burden of showing that the trial court's decision was erroneous. *Id.* A decree of rescission may be rendered where the party seeking rescis-

sion in not in default and the defaulting party can be restored to the same condition he occupied before the making of the contract. *Kruse, Kruse & Miklosko, Inc. v. Beedy,* 170 Ind.App. 373, 353 N.E.2d 514, 530 (1976). Rescission of a contract is not automatically available. *New Life Community Church of God v. Adomatis,* 672 N.E.2d 433, 438 (Ind. Ct.App.1996). However, if a breach of the contract is a material one which goes to the heart of the contract, rescission may be the proper remedy. *Stephenson v. Frazier,* 399 N.E.2d 794, 798 (Ind.Ct.App.1980), *trans. denied; Bixwood, Inc. v. Becker,* 181 Ind.App. 223, 391 N.E.2d 646, 648 (1979). When a written agreement to convey real property makes time of the essence, fixes a termination date, and there is no conduct giving rise to estoppel or waiver, the agreement becomes legally defunct upon the stated termination date if performance is not tendered. *Smith v. Potter,* 652 N.E.2d 538, 542 (Ind.Ct. App.1995), *trans. denied.* Where time is of the essence of the contract and a time for performance is specified, strict performance at that point of time is necessary unless waived. *Id.*

### C. Condition Precedent and Subsequent

■ A condition precedent is either a condition which must be performed before the agreement of the parties becomes binding, or a condition which must be fulfilled before the duty to perform an existing contract arises. *Dvorak v. Christ,* 692 N.E.2d 920, 924 (Ind.App.Ct.1998). A condition subsequent is a condition which, if performed or violated (as the case may be), defeats the contract. *Id.* In *Dvorak,* the contract to sell real estate was subject to a condition precedent: that the purchaser obtain a mortgage loan in the amount of $451,600.00. *Id.* at 924. The contract was also subject to a condition subsequent: the period of time in which the purchaser had to obtain the financing expired on a date certain. *Id.* at 924. After the time period expired, the purchaser attempted to waive the condition precedent and demanded that the seller close the transaction. *Id.* at 924. We held that where the purchaser had not communicated, either orally or in writing, an express waiver of the condition precedent *before* the expiration of the contract, the

contract terminated and the seller was not required to close. *Id.* (buyer did not cite any cases which would permit him to revive the purchase agreement by waiving the condition precedent after the purchase agreement terminated).

■ The same result obtains in the present case. The Purchase Agreement provided a condition subsequent by allotting Buyer 180 days to satisfy or waive the condition precedent regarding the procurement of land use and drainage approvals. Obviously, the condition subsequent/expiration date was for Seller's benefit because it required Buyer either to proceed with closing or allow Seller to place the real estate back on the market to sell to another purchaser. In other words, the condition subsequent/expiration date prohibited Buyer from keeping the sale of Seller's property in limbo for an indefinite, extended period of time.

The Purchase Agreement provided that time was of the essence. The addendum reiterated that time was important. Seller specifically agreed in writing to one extension of the condition subsequent/expiration date, until December 31, 1995, but refused to agree to an additional extension. Thus, Seller did not waive the condition subsequent/expiration date.

Buyer neither satisfied the condition precedent nor communicated its waiver thereof until after the condition subsequent/expiration date. As time was of the essence, the Purchase Agreement became legally defunct after December 31, 1995. Thus, the trial court did not abuse its equitable discretion in granting Seller's petition for rescission. *Dvorak,* 692 N.E.2d at 924–925; *Smith,* 652 N.E.2d at 542.

## II.   *Effect of Rescission*

### *Election of Remedies*

■ As the Purchase Agreement had become legally defunct after December 31, 1995, it may have been unnecessary for Seller to have petitioned the trial court for rescission. Nevertheless, having elected this remedy, the Seller is bound by both the intended and unintended consequences of this election.

■ A party bringing an action for rescission has made his election between: 1) affirming the contract, retaining the benefits, and seeking his damages, or 2) rescinding the contract, returning any benefits received, and being returned to the status quo. *Hart,* 666 N.E.2d at 1275. The party rescinding a contract must repudiate the part of the contract which is beneficial to him as well as that part of the contract which is not. *Higham v. Harris,* 108 Ind. 246, 8 N.E. 255, 258 (1886); *Powers v. Ford,* 415 N.E.2d 734, 736 (Ind.Ct. App.1981) (one may not pursue inconsistent remedies where one is based on a theory which disaffirms a contract and the other is based on a theory which affirms the contract); *Grissom v. Moran,* 154 Ind.App. 419, 292 N.E.2d 627, 629 (1973); *Prasuhn v. Alfke,* 105 Ind.App. 300, 11 N.E.2d 1000, 1005 (1938). He must affirm or avoid the contract in whole and cannot treat it as good in part and void in part. *Higham,* 8 N.E. at 258. He may not affirm that part of the contract which pleases him and rescind that part which he considers disadvantageous. *Prasuhn,* 11 N.E.2d at 1005.

### A.   *Return to Status Quo—Earnest Money*

■ As noted above, it is axiomatic that a party seeking rescission of a contract must return the defaulting party to the status quo which necessitates a return of any money paid under the contract. *Hart,* 666 N.E.2d at 1275. Accordingly, we must reverse and remand with instructions that Seller return Buyer's $1,000.00 earnest money deposit.

### B.   *Attorney Fees*

#### 1.   *Propriety of Award Generally— Public Policy*

■ Indiana follows the American Rule which ordinarily requires each party to pay their own attorney's fees. *Willie's Construction Co. v. Baker,* 596 N.E.2d 958, 963 (Ind.Ct.App.1992), *trans. denied.* Attorney fees are not allowable in the absence of a statute or agreement between the parties. *Id.* A contract that allows for the recovery of reasonable attorney fees will be enforced according to its terms unless it is violative of public policy. *Id.* The policy of the law

generally is to discourage litigation and encourage the negotiation and settlement of disputes. *Lafayette Tennis Club v. C.W. Ellison Builders, Inc.,* 406 N.E.2d 1211, 1214 (Ind.Ct.App.1980); *In re Train Collision at Gary, Indiana,* 654 N.E.2d 1137, 1146 (Ind. Ct.App.1995) (one of the legislative policies advanced by the Indiana Tort Claims Act is to discourage excessive litigation), *trans. denied; Hanover Logansport, Inc. v. Robert C. Anderson, Inc.,* 512 N.E.2d 465, 471 (Ind.Ct. App.1987) (the intention of Ind.Trial Rule 68 is to encourage settlements and avoid protracted litigation).

### 2. Seller's Election to Rescind

In the present case, Seller initiated the present litigation seeking rescission of a legally defunct contract. The public policy against unnecessary litigation requires that we impose the consequences of Seller's election of remedies despite the broad language providing for attorney fees in the Purchase Agreement. To hold otherwise would permit a nondefaulting party to initiate litigation for the sole purpose of obtaining attorney fees.

Seller's petition to rescind the Purchase Agreement required that Seller disaffirm the contract as a whole, including the right to an award of reasonable attorney fees as provided under the agreement. Accordingly, we reverse and remand with instructions that the trial court vacate the award of attorney fees.

### Conclusion

We affirm the trial court's granting of Seller's petition to rescind the Purchase Agreement. However, we reverse and remand with instructions that Seller return the $1,000.00 earnest money deposit to Buyer. We also reverse the award of attorney fees.

HOFFMAN and RUCKER, JJ., concur.