**VAN BIBBER HOMES SALES and Van Bibber Lake, Inc., Appellants–Defendants,**

v.

**Thomas and Pam MARLOW, Appellees–Plaintiffs.**

No. 60A01–0201–CV–33.

Court of Appeals of Indiana.

Nov. 21, 2002.

---

Mark Small, Indianapolis, IN, Attorney for Appellants.

Michael L. Carmin, Andrews, Harrell, Mann, Carmin & Parker, PC, Bloomington, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Thomas and Pam Marlow ("the Marlows") purchased a Crystal Valley manufactured home from Van Bibber Home Sales ("Van Bibber") in 1999. Numerous problems developed in the home after its installation, and the Marlows filed a complaint against Van Bibber in Owen Circuit Court requesting rescission of the contract. The trial court ordered the contract rescinded, finding that the home contained numerous defects and that Van Bibber made numerous misrepresentations regarding the features to be included in the home. Van Bibber appeals raising the following issues, which we restate as:

I.    Whether the trial court's finding that Van Bibber was responsible for the damage to the home caused by septic tank back-ups

was supported by sufficient evidence;

II. Whether the trial court abused its discretion when it ordered rescission of the contract between the Marlows and Van Bibber;

III. Whether the Marlows waived their claim of breach of contract that was based on defects in the home; and,

IV. Whether the trial court's conclusion that rescission was an appropriate remedy due to "breach of material warranty" was contrary to law.

We affirm.

### Facts and Procedural History

In 1999, after their home was destroyed by fire, the Marlows visited Van Bibber's manufactured home sales lot in Greencastle, Indiana, in addition to the lots of other dealers. In March, 1999, the Marlows met with Dwayne Van Bibber to discuss the purchase of a Crystal Valley manufactured home, and they signed a contract for purchase with Van Bibber. The home was delivered two to three weeks after the contract was executed. At the time of delivery, the Marlows had made payments to Van Bibber in the amount of $48,773.00, but still owed $6,802.00 on the contract.

As will be discussed in greater detail below, after the home was delivered, the Marlows discovered that there were numerous defects in the home and that several of the features that they ordered were installed improperly or were the wrong color. Due to those defects, on August 18, 1999, the Marlows filed a complaint against Van Bibber in Owen Circuit Court. In the complaint, the Marlows alleged that Van Bibber made numerous misrepresentations concerning the components of the home and the manner in which they would be installed, and that the home was defec-

tive because it suffered from numerous defects. Appellant's App. pp. 12–13. The Marlows requested that the trial court rescind the contract, order Van Bibber to remove the home from their property, and refund the payments they had made on the home. Appellant's App. p. 14.

A bench trial began on December 5, 2000, and continued on January 26, 2001. After receiving proposed findings of fact and conclusions of law from both parties, on November 7, 2001, the trial court entered findings of fact and conclusions of law. In its findings of fact, the trial court found the following problems and defects in the Marlows's home:

(a) due to improper installation, the home has settled and is no longer square which in turn has lead to numerous weaknesses throughout

(b) the improper connection to the septic system, with several 90 degree angles, improper fall and incorrect choice of piping has caused clogging and backup problems continually

(c) improper installation and location of skylights and ceiling fans has lead to leaks, cracks and water damage in several rooms

(d) improper installation of the carpeting and vinyl throughout house includes installation of the wrong selection, material which is pulled and bowed and pulling away from the wall in virtually every room

(e) incorrect choice of color selection of materials throughout the home includes exterior siding, carpeting and vinyl, wall trim, kitchen and bath tile, curtains, wallpaper, refrigerator, front door, kitchen sink

(f) improperly prepared and painted drywall in every room of the home has caused cracking and bowing with numerous nail pops

(g) numerous problems in bath areas include improperly installed shower doors and fixtures and failure to seal or caulk whereby water damage has resulted: the vinyl has been damaged beyond repair

(h) the fireplace problem areas start with the wrong selection of tile, which is cracking and include incorrect venting, gapping [sic] fireplace doors, moisture inside the fireplace and a mantle which is bowed; the fireplace has begun to sink

(i) the exterior of the house, besides having the wrong color selection has vinyl which is bowing out, has no steps in the front, no side rails on the back steps, numerous nail pops on the roof and a precariously placed foundation; the down spouts and guttering were installed incorrectly and are clogging and retaining water

(j) ill-fitting windows in the home are hung improperly whereby some open and some do not

(k) loose or improperly installed trim, molding, thresholds and door frames have aided in the cracking of the drywall and damage to the flooring

(l) the cabinetry in the kitchen is incorrectly hung, poorly finished and cracking

Appellant's App. p. 58. Also, the trial court found that when Van Bibber connected the septic tank to the home, a temporary protective cover was dropped into the septic line, which caused repeated septic back-ups into the Marlows's home resulting in extensive damage to the floors and walls. Appellant's App. p. 59. The trial court determined that the total cost to repair the damage to the Marlows's home was $27,448. Appellant's App. p. 59.

In addition to those defects and problems with the home, the trial court found that Van Bibber made numerous material misrepresentations to the Marlows regarding the components of the home they had purchased and the manner in which it would be installed. Therefore, the trial court concluded that

> [t]he contract between [the Marlows] and [Van Bibber] failed in its essential purpose by [Van Bibber's] failure and inability to deliver the mobile home as represented to [the Marlows] and by [Van Bibber's] misrepresentations regarding the features to be included in the home. [The Marlows] are entitled to rescission of the contract.

Appellant's App. p. 62. Van Bibber was ordered to remove the manufactured home from the Marlows's property, and the trial court entered a judgment of $48,773.00 against Van Bibber, which was the amount of the Marlows's total payments on the home. The trial court also ordered Van Bibber to pay the Marlows's attorney fees.

### Standard of Review

The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." "In our review, we first consider whether the evidence supports the factual findings. Second, we consider whether the findings support the judgment." *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000) (citations omitted). The trial court's judgment is " 'clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment.' " *Dunson v. Dunson*, 769 N.E.2d 1120, 1123 (Ind.2002) (quoting *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996)). Conclusions of law are reviewed de novo. *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind.2002). Also, "[t]he court on appeal is to give due regard to

'the opportunity of the trial court to judge the credibility of the witnesses.'" *Dunson*, 769 N.E.2d at 1123 (quoting Ind. Trial R. 52(A)).

## I. The Septic Tank

■ Van Bibber argues that the trial court's finding that Van Bibber was responsible for the repeated septic tank back-ups into the Marlows's home is not supported by any evidence in the record. With regard to the septic tank, the trial court made the following findings of fact:

6. The line to connect the household plumbing to the septic tank was stubbed into the foundation space for connection by [Van Bibber]. A temporary end-cover was placed on the pipe to protect it until [Van Bibber] completed the connection.

7. [Van Bibber] permitted the temporary protective covering over the end of the septic line to be dropped into the line, causing blockage of the septic line, all unknown to [the Marlows].

8. [The Marlows] complained to [Van Bibber] about septic problems and [Van Bibber] refused to acknowledge any responsibility. After repeated septic back-ups in [the Marlows's] home, [Van Bibber] opened the septic line and the blockage was located and removed. The cure of the septic problem occurred only after [the Marlows] had suffered repeated septic backup and overflow in the residence causing damage to floors and walls.

Appellant's App. p. 59.

At trial, Dwayne Van Bibber testified that an employee of Van Bibber Homes was responsible for connecting the household plumbing to the septic tank line stubbed into the foundation. Tr. p. 304. Darrell Ashe, the independent contractor who ran the septic line through the foundation wall, testified that he placed a mortar bag over the septic line to keep mortar and other items from getting into the line before it was connected to the household plumbing. Tr. pp. 187–88. The bag was described as having paper on the outside and a thin plastic layer on the inside. Tr. p. 188. Tom Marlow testified that when the blockage in the septic tank was knocked loose, he saw something that looked like "plastic wrap or plastic." Tr. p. 309. Additionally, Mrs. Marlow's niece, Latasha Finch, testified that she saw a large piece of plastic pop out of the end of the septic line as they were attempting to remove the blockage. Tr. p. 134. This evidence is sufficient to support the trial court's finding that Van Bibber was responsible for the damage to the Marlows's home that occurred as a result of the repeated septic tank bank-ups.

## II. Rescission

■ Next, Van Bibber argues that the trial court abused its discretion when it granted the Marlows's request for rescission of the contract. A request for rescission is addressed to the sound discretion of the trial court. *Barrington Mgmt. Co. v. Paul E. Draper Family Ltd. P'ship*, 695 N.E.2d 135, 141 (Ind.Ct.App.1998). Rescission of a contract is defined as "the annulling, abrogating, or unmaking of a contract." *Yates–Cobb v. Hays*, 681 N.E.2d 729, 733 (Ind.Ct.App.1997) (citations omitted). "The remedy of contract rescission functions to restore the parties to their precontract position, that is, the status quo." *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 967–68 (Ind.Ct.App. 2000), *trans. denied* (citing *Stevens v. Olsen*, 713 N.E.2d 889, 891 (Ind.Ct.App. 1999), *trans. denied* ).

■ The party seeking rescission of a contract bears the burden of proving his right to rescind and his ability to return any property received under the contract. *Barrington Mgmt. Co.*, 695 N.E.2d at 141.

However, the party appealing the trial court's grant of rescission bears the burden of demonstrating that the trial court's decision was erroneous. *Id.* "Rescission of a contract is not automatically available," but "if a breach of the contract is a material one which goes to the heart of the contract, rescission may be the proper remedy." *Id.*

"[A] decree of rescission may be rendered where the party seeking rescission [is] not in default and the defaulting party can be restored to the same condition he occupied before the making of the contract." *Id.* (citation omitted). A contract may be rescinded, warranting the need for equitable remedies, only when a party avers that he has performed a substantial part of his obligations under a contract and that the other party refused to perform its obligations. *Yost v. McCarty,* 123 Ind.App. 288, 293, 108 N.E.2d 718, 721 (1952), *trans. denied.* "[O]ne party will not be permitted by his or her own breach to create a condition which will tend to bring the other party into default then assert that such party's rights are forfeited by a default so caused." 17B *C.J.S.* Contracts § 473 (1999).

Van Bibber argues that the Marlows were in default because they owed $6,802 on the contract, and therefore, the trial court abused its discretion when it ordered rescission of the contract. However, in exchange for the full purchase price of $61,275, the Marlows expected to receive a manufactured home that would be properly installed with the features they had selected. The Marlows refused to make the final payment on the contract because there were several problems with the home including the wrong colors of siding, ceramic tile, and vinyl flooring, and the location of two skylights in a manner that the Marlows had not contracted for. Tr. pp. 25–27. As they were attempting to secure the correction of those problems, other, more substantial problems with the home became apparent due to Van Bibber's faulty installation, including the septic tank back-ups.

In this case, it is clear that Van Bibber would have been in breach of contract regardless of whether the Marlows had made the final payment on the contract. The Marlows's final payment was due before they moved into the home, yet Van Bibber granted the Marlows possession without the payment. Most of the serious problems in the home occurred as the result of faulty installation, including the cracked and bowing walls, water damage to the walls, improperly hung windows, a sinking fireplace, and the repeated septic back-ups and as such, were not evident to the Marlows until after they moved in. In addition, the trial court found that Van Bibber made misrepresentations to the Marlows regarding the features to be included in the home. Appellant's App. p. 62. These misrepresentations also occurred before the Marlows's final payment on the home was due. Clearly, the Marlows did not receive the home that they had bargained for, and Van Bibber's prior breach of contract is a substantial one amounting to a complete failure of consideration, where the cost to repair the home is nearly half of the purchase price.

Under these facts and circumstances, we believe that the Marlows reasonably withheld the final payment when they discovered that the home did not contain the features and color selections they contracted for. Their default in this regard did not affect Van Bibber's prior and substantial breach of contract. In addition, an award of damages in this case would be economically inefficient due to the extent of damage to the home and Van Bibber's misrepresentations.

Because the Marlows's failure to make the final payment did not cause Van Bibber's substantial breach of contract, and said breach would have occurred even if the full purchase price had been paid, the trial court did not abuse its discretion when it ordered rescission of the contract. "The law does not require the doing of a useless thing." *Stropes by Taylor v. Heritage House Childrens Center of Shelbyville, Inc.,* 547 N.E.2d 244, 247 (Ind.1989).

### III.  Waiver of Defects

Thirdly, Van Bibber argues that the Marlows "waived any defects as to the manufactured home when Mrs. Marlow" initialed a factory assistance request form that listed requested repairs and contained the statement "[t]his is to certify that all assistance requested from the factory is completed to my satisfaction." Br. of Appellant at 12. "Performance of a [contractual] condition may be excused by waiver. However, the waiver must be the 'voluntary and intentional relinquishment of a known right.'" *Ind. State Highway Comm'n v. Curtis,* 704 N.E.2d 1015, 1019 (quoting 6 Williston, Contracts § 678 (3rd ed. 1961)); *see also N. Ind. Commuter Transp. Dist. v. Chicago SouthShore,* 685 N.E.2d 680, 695 (1997) (waiver of a contractual right requires intentional relinquishment of a known right).

The Marlows contend that Van Bibber has waived the affirmative defense of waiver because it did not raise the defense in its answer. Generally, an affirmative defense is waived if it is not raised in the pleadings. *Samar, Inc. v. Hofferth,* 726 N.E.2d 1286, 1291 (Ind.Ct.App.2000), *trans. denied* (citing Ind. Trial Rule 8(C)). "However, if an issue that is not raised in the pleadings is tried by express or implied consent of the parties, the issue will be treated as if it were raised by the pleadings." *Id.* (citations omitted).

"Before a party may impliedly consent to the trial of an unpleaded issue, he must be given some notice as to the existence of that issue. Notice may be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of evidence. Notice may be implied where the evidence presented at trial is such that a reasonably competent attorney would have recognized the unpleaded issue as being litigated. However, the opposing party may not put a new issue into a trial under the cloak of evidence relevant to an already pleaded issue. Both parties must litigate the new issue, and implied consent will not be found unless the parties know or should have known that the unpleaded issue was being presented." *Id.* (quoting *Wampler v. Tusing,* 711 N.E.2d 533, 536 (Ind.Ct.App.1999) (quoting *K Mart Corp. v. Brzezinski,* 540 N.E.2d 1276, 1281 (Ind.Ct.App.1989), *trans. denied*)).

At trial, Mrs. Marlow was asked if the manufacturer, Patriot Homes, made the repairs that were listed on the factory assistance request form, and if she initialed the form indicating that repairs were made. The form was also admitted as an exhibit. However, the testimony concerning the manufacturer's repairs and the form was brief and focused on whether the repairman actually made the repairs that she initialed. *See* Tr. pp. 87–91. This evidence was not sufficient to put the Marlows's attorney on notice that the unpleaded defense of waiver was being litigated. Therefore, Van Bibber waived the defense of waiver by failing to raise it in the pleadings.

### IV.  Waiver of Warranties

Finally, Van Bibber argues that the trial court's judgment "should be vacated as being contrary to law" because the Marlows waived any express or implied warranties when they signed the con-

tract with Van Bibber[1] and the trial court found that defects in the home constituted a "breach of material warranty." Br. of Appellant at 20. The trial court made the following conclusions of law:

> 2. [Van Bibber] made material misrepresentations to [the Marlows] about the features and components of the home sold to [the Marlows].
>
> 8. Defendant Van Bibber Home Sales breached its contract with [the Marlows] and failed to deliver the home as contracted with [the Marlows].
>
> 10. [The Marlows] cannot be fairly compensated in an award of damages for the misrepresentations regarding features of the home and the defects that are not susceptible of repair . . . .
>
> 11. The contract between [the Marlows] and [Van Bibber] failed in its essential purpose by [Van Bibber's] failure and inability to deliver the mobile home as represented to [the Marlows] and by [Van Bibber's] misrepresentations regarding the features to be included in the home. [The Marlows] are entitled to rescission of the contract. See, *Sieveking v. Litzler,* 31 Ind. 13 (Ind.1869). Breach of a material warranty entitles [the Marlows] to rescission. *Prudential Insurance Company of America v. Smith,* 108 Ind. 61 [231 Ind. 403, 108 N.E.2d 61] (Ind.1952).

Appellant's App. pp. 61–62.

▮▮▮▮ "On appellate review a trial court's judgment may be affirmed even if sustainable on grounds different from those reflected in the trial court's findings." *Kimberlin v. DeLong,* 637 N.E.2d 121, 125 (Ind.1994) (citations omitted). It is clear from the findings of fact and conclusions of law that the trial court determined that Van Bibber breached its contract with the Marlows. "If a breach of the contract is a material one which goes to the heart of the contract, rescission may be the proper remedy." *Barrington Mgmt. Co. v. Paul E. Draper Family Ltd. P'ship,* 695 N.E.2d 135, 141 (Ind.Ct.App. 1998). We have already sustained the trial court's rescission order under the theory of material breach; we therefore need not be concerned whether that breach, which amounted to a complete failure of consideration, was somehow inoculated by warranty law.

### Conclusion

The trial court's finding that Van Bibber was responsible for the damage caused to the Marlows's home due to the septic tank back-ups was supported by sufficient evidence. Also, rescission of the contract was an appropriate remedy in this case because Van Bibber substantially breached the contract, amounting to a complete failure of consideration. Finally, the defense of waiver was waived because Van Bibber failed to raise it in the pleadings.

Affirmed.

BAILEY, J., and SULLIVAN, J., concur.

---

1. The contract contained the following provision:

> EXCLUSION OF WARRANTIES. I UNDERSTAND THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED ARE EXCLUDED BY YOU FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. I UNDERSTAND THAT YOU MAKE NO WARRANTIES WHATSOEVER REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT CONTAINED THEREIN, EXCEPT THAT AS MAY BE REQUIRED UNDER APPLICABLE STATE LAW.

Appellant's App. p. 37.