## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 11 2017, 7:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael N. Red
John J. Morse
Morse & Bickel, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Douglas B. Bates
Neal Bailen
Chelsea Stanley
Stites & Harbison PLLC
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven J. Svabek, D.O., et al.,

*Appellant-Defendant,*

v.

Lancet Indemnity Risk Retention Group, Inc.,

*Appellee-Plaintiff.*

May 11, 2017

Court of Appeals Case No. 41A05-1610-PL-2271

Appeal from the Johnson Superior Court

The Honorable Marla K. Clark, Judge

Trial Court Cause No. 41D04-1401-PL-8

**Najam, Judge.**

## Statement of the Case

Steven J. Svabek, D.O., appeals the trial court's entry of summary judgment in favor of Lancet Indemnity Risk Retention Group, Inc. ("Lancet") on Lancet's complaint seeking rescission of Svabek's medical malpractice insurance policy. Svabek presents three issues for our review, but we address a single dispositive issue, namely, whether the trial court erred when it entered summary judgment for Lancet on its claim for rescission of the policy. We affirm.

## Facts and Procedural History

The trial court's findings set out the relevant facts and procedural history as follows:

> 1. Dr. Svabek is an orthopedic surgeon residing in Boca Raton, Florida. Dr. Svabek previously practiced medicine in the State of Indiana. (Amended Complaint).
>
> 2. Lancet is an insurance company organized under the laws of the State of Nevada with its corporate office in Las Vegas, Nevada, and its executive office in Tampa, Florida. (Amended Complaint).
>
> 3. On or about December 7, 2012, and in consideration of a premium payment made contemporaneously by Dr. Svabek totaling $68,040.00, the parties entered into a policy of physician's professional liability insurance, policy number LI09121000182 (the "Policy").
>
> 4. The Effective Date of the policy is December 7, 2012, with a Retroactive Date of December 7, 2010. The Policy is a "Tail Policy" only with no prospective coverage.

5. The Policy Period is December 7, 2012 through December 7, 2013. (Lancet's Ex. A).

6. The Policy only covers an Occurrence on or after December 7, 2010 [the Retroactive Date] and before December 7, 2012 which was first made against Dr. Svabek and reported to Lancet between December 7, 2012 and December 7, 2013 [the Policy Period]. (Lancet's Ex. A; Lancet's Ex. A-1; Lancet's Ex. A-2).

7. The coverage provided by the Policy is subject to a number of exclusions, including the following:

"[Lancet Indemnity is] not obligated to defend or pay any Damages, judgments, settlements, loss, indemnity or Medical Payments on account of any Claim:

(a) based on, arising out of, or in any way involving any Occurrence, fact, circumstance, or situation:

> 1. that was the subject of written notice given under any prior policy unless such prior policy was one of our policies and providing that the Occurrence happened subsequent to the Retroactive Date of this Policy;

> 2. that was the subject of any prior or pending written demand for monetary damages, administrative or arbitration proceeding or civil or criminal litigation against any Insured, or the same or substantially the same fact, circumstance, or situation underlying or alleged in the prior matter, which existed prior to the initial effective date of the Policy Period;

> 3. that was reported in the Application or was identified in any summary or statement of Claims or potential Claims submitted in connection with the Application;

4. that was reported to any other source from which payment might be made before the initial effective date of the Policy Period of the first policy that we issue to you;

5. of which any Insured had knowledge prior to the inception of the first insurance policy issued to you by [Lancet Indemnity] and continuously renewed by [Lancet Indemnity] if such knowledge would cause a reasonable person to believe that a Claim might be made; or

6. arising out of Professional Services rendered prior to the Retroactive Date of this Policy.["]

(Lancet's Ex. A-1).

8.  In entering the contract for the Policy, on December 7, 2012, Dr. Svabek completed and submitted an application to Lancet. In that application, Dr. Svabek confirmed, among other things, that he had no known potential or anticipated losses and that no prior carrier had declined or refused coverage for a medical incident.  (Lancet's Ex. A-5).

9.  The Policy states that Lancet relied upon the statements made by Dr. Svabek in his application for insurance and that Dr. Svabek warrants those statements are true:

"In issuing this Policy, [Lancet Indemnity] relied upon the statements and representations in the Application.  The Insureds warrant that all such statements and representations are true and deemed material to the acceptance of the risk or the hazard assumed by [Lancet Indemnity] under this Policy.["]
(Lancet's Ex. A-1).

* * *

14.  Subsequent to entering into the Policy, the following three (3) matters (the "Matters") were brought to the attention of Lancet for which Dr. Svabek asserts coverage is owed:

> (a) On August 15, 2012, Ms. Robin Sykes and Mr. Thomas Williams ("Sykes and Williams") filed a proposed complaint (the "Sykes/Williams Matter") against Dr. Svabek with the Indiana Department of Insurance ("IDOI").  In the proposed complaint, Sykes and Williams allege harm resulting from surgeries performed by Dr. Svabek on or about February 16, 2009, March 22, 2010, December 20, 2010, and March 4, 2011.  (Lancet's Ex. D).

> (b) On November 30, 2012, Ms. Sharon Pettigrew ("Ms. Pettigrew"), as Administratrix of the Estate of Mr. John Austin, filed a proposed complaint (the "Pettigrew Matter") with the IDOI.  In the proposed complaint, Ms. Pettigrew alleges harm resulting from medical care provided by Dr. Svabek on or about December 8, 2010.  (Lancet's Ex. I).

> (c) On February 5, 2013, Ms. Tamara Nardini ("Ms. Nardini"), individually and on behalf of her minor son, Matthew Nardini, filed a lawsuit (the "Nardini Matter") against Dr. Svabek in the Morgan County Superior Court.  Ms. Nardini alleges harm resulting from medical care provided by Dr. Svabek on or about February 9, 2011 and February 24, 2011. (Lancet's Ex. K).

15.  On August 28, 2012, the Indiana Patient's Compensation Fund ("PCF") through the IDOI, sent notice of the Sykes/Williams Matter to Dr. Svabek. (Lancet's Ex. E).

16.  On November 20, 2012, counsel for Ms. Sykes and Mr. Williams sent the Proposed Complaint directly to Evanston

Insurance, the insurance company that provided a medical malpractice policy that covered Dr. Svabek for the period of January 12, 2010 until January 12, 2011. (Lancet's Ex. F-1; Lancet's Ex. F-2).

17. On November 20, 2012, a senior claims examiner with Markel Corporation, a company acting as claims manager for Evanston Insurance, sent Dr. Svabek the correspondence and Proposed Complaint that it received from the lawyer representing Sykes/Williams. (Lancet's Ex. F-1).

18. On December 4, 2012, Markel sent correspondence to Dr. Svabek advising that no coverage was available under the Evanston policy for the Sykes/Williams Proposed Complaint because the Evanston policy lapsed on January 12, 2011 and thus would not cover the Proposed Complaint filed on August 15, 2012. (Lancet's Ex. F-3).

19. The Markel December 4, 2012 denial letter was sent to Dr. Svabek by certified mail. It was also sent to Dr. Svabek by email to svabek.steve@gmail.com. (*Id.*)

20. Dr. Svabek admits that his email address in 2012 was svabek.steve@gmail.com, which is the email address where the denial letter was sent. (Lancet's Ex. G).

21. Markel's records reflect that the email sent to svabek.steve@gmail.com was successfully delivered on December 4, 2012. (Lancet's Ex. F-3).

22. The Markel denial letter was also sent by mail and email to Susan Cline, an attorney previously hired by Markel to represent Dr. Svabek in a separate claim. (*Id.*; Lancet's Ex. F-4).

23. On December 7, 2012, three days after Evanston sent its denial of coverage to Dr. Svabek by certified mail and by email, Dr. Svabek completed and submitted an application to Lancet for

medical malpractice insurance coverage. In that application, Dr. Svabek confirmed, among other things, that he had no known potential or anticipated losses and that no prior carrier had declined or refused coverage for a medical incident. (Lancet's Ex. A-5).

24. On December 18, 2012, Ms. Sykes and Mr. Williams filed a complaint for damages against Dr. Svabek in the Johnson Superior Court. (Lancet's Ex. H).

25. Lancet was put on notice of the claims being asserted by Sykes/Williams and retained separate counsel to represent Dr. Svabek in the Johnson Superior Court action, subject to a reservation of rights. (Lancet's Ex. A).

* * *

28. The Policy excludes coverage for any claim that was the subject of an administrative proceeding, civil litigation or written demand for damages which existed prior to the Policy's Effective Date of December 7, 2012. (Lancet's Ex. A-1).

29. On November 30, 2012, Ms. Pettigrew, as Administratrix of Mr. Austin's Estate, filed a proposed medical malpractice complaint against Dr. Svabek with the IDOI under the provisions of the Indiana Medical Malpractice Act (the "Pettigrew Proposed Complaint"). (Lancet's Ex. I).

30. The Pettigrew Proposed Complaint alleges Dr. Svabek rendered medical care and treatment to Mr. Austin from December 8, 2010 to January 6, 2011 that fell below the appropriate standard of care. (*Id.*).

31. On December 10, 2012, Ms. Pettigrew filed a complaint against Dr. Svabek in the Marion Superior Court, under Cause No. 49D05-1212-CT-047168. (Lancet's Ex. J).

32.  Lancet was put on notice of Ms. Pettigrew's lawsuit and retained separate counsel to represent Dr. Svabek in the Marion County Court action, subject to a reservation of rights.  (Lancet's Ex. B; Lancet's Ex. A).

* * *

40.  Lancet would have declined to issue the Policy or would have offered a policy to Dr. Svabek on much different terms if Dr. Svabek had disclosed in his application the existence of the Sykes/Williams claim.  (Lancet's Ex. A).

41.  On January 24, 2014, Lancet filed three separate complaints for declaratory judgment in the Morgan, Marion and Johnson County courts asking for a determination as to whether Lancet owed coverage to Dr. Svabek for malpractice claims pending in each of those respective courts. . . .

* * *

45.  The three actions were consolidated in the Johnson County Superior Court on August 18, 2015.

46.  Lancet filed its amended complaint on August 27, 2015.  The amended complaint seeks a declaration that Lancet is entitled to rescind the insurance policy it issued to Dr. Svabek.  In the alternative, the amended complaint seeks a declaration that Dr. Svabek is not entitled to coverage as to the three medical malpractice claims.

Appellant's App. Vol. II at 19-27.

[3]  On February 22, 2016, Lancet moved for summary judgment.  Following a hearing, the trial court concluded in relevant part as follows:

6. Lancet is entitled to rescind the Policy because Lancet relied on false and material representations in Dr. Svabek's insurance application. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997) (An insurance policy is "voidable at the insurance company's option" if the insurer relies on a "material misrepresentation or omission of fact in an insurance application.")

7. Insurers "rely on the truthfulness and completeness of the information on the application in assessing whether to issue a policy and on what terms." *Roe v. Sewell*, 128 F.3d 1098, 1103 (7th Cir. 1996); *see also Guzorek*, 690 N.E.2d at 672 (rescission "protects the insurer's right to know the full extent of the risk it undertakes when an insurance policy is issued").

8. Dr. Svabek's insurance application erroneously stated that no prior insurance carrier had refused or declined to issue coverage regarding any medical incident or threat of claim. That false statement was contained in the "Statement of No Known Claims/Losses" that Dr. Svabek completed and submitted to Lancet on December 7, 2012.

9. Dr. Svabek's prior insurance carrier denied coverage to Dr. Svabek for the Sykes/Williams claim pursuant to a denial letter issued on December 4, 2012.

10. Dr. Svabek's representation that a prior carrier had not previously denied coverage, whether intentional or not, was false. Dr. Svabek's failure to disclose a known claim entitles Lancet to rescind the Policy.

11. Dr. Svabek had prior knowledge of the Sykes/Williams malpractice claim based on multiple notifications sent to him by various means, from the IDOI and his prior insurance carrier. Dr. Svabek's prior knowledge is supported by 1) the letter sent to him by the Department of Insurance on August 28, 2012, 2) the notice sent to him by Markel on November 20, 2012, advising

him of the Sykes/Williams Proposed Complaint, 3) the denial letter sent to him on December 4, 2012, by certified mail, and 4) the denial letter sent to him on December 4, 2012, by email.

12. Dr. Svabek admitted that the Markel denial letter was sent to the exclusive email address he used in December 2012. That email, as well as the letters sent to Dr. Svabek by certified mail and ordinary mail, create a presumption of delivery that Dr. Svabek has not rebutted. *E.g.*, *Conrad v. Universal Fire & Cas. Ins. Co.*, 686 N.E.2d 840, 843 (Ind. 1997).

\* \* \*

14. Dr. Svabek submitted his application on December 7, 2012. He provides no explanation for why he suddenly decided to obtain malpractice insurance three days after his prior carrier sent the denial email. . . .

15. Despite having knowledge of the claim, Dr. Svabek did not disclose the Sykes/Williams Proposed Complaint in the December 7, 2012, application and affirmatively swore there were no pending claims against him.

16. False representations warrant rescission "regardless of whether the misrepresentation was innocently made or made with fraudulent design" because innocent misrepresentations are "just as injurious as intentional fraud." . . . Thus, Dr. Svabek's subjective intent in providing the false information to Lancet does not impact whether rescission is appropriate.

17. The information that Dr. Svabek did not disclose in his insurance application was material. A representation in an application for insurance is deemed material if the facts represented reasonably enter into and influence the insurer's decision whether to issue the policy or charge a higher premium. . . .

18. Lancet would have either declined to issue the Policy or offered the Policy to Dr. Svabek on different terms if Dr. Svabek had provided truthful information in the Statement of No Known Claims. Chris Teter's affidavit is sufficient under Indiana law to establish that Dr. Svabek's failure to inform Lancet of the Sykes/Williams Proposed Complaint was material to Lancet's decision to issue the Policy. . . .

19. Moreover, the unambiguous language of the Policy itself "deem[ed] material to the acceptance of the risk" the misrepresentations at issue.

20. There can be no reasonable difference of opinion that information regarding a prior carrier's previous denial of coverage for an existing claim is material to an insurer's decision to issue coverage. . . .

21. Accordingly, Dr. Svabek's untruthful statement entitles Lancet to summary judgment in its favor as to its request for a judgment declaring its right to rescind the Policy. The Court orders rescission of the Policy and that the parties be returned to their respective positions prior to the Policy. Lancet is entitled to recover any amounts paid on Dr. Svabek's behalf for his legal defenses during the terms of the Policy subject to any set-off for any premium payments on the Policy that Lancet received.

22. Even if Lancet is not entitled to rescind the *entire* policy, Dr. Svabek still would not be entitled to coverage under the Lancet Policy for any of the three medical malpractice complaints. Several unambiguous exclusions apply.

*Id.* at 29-33 (emphasis original). In the alternative, the trial court also concluded that Svabek failed to timely make deductible payments to Lancet, which "operate[d] to exclude any coverage obligation as to" the three malpractice claims against Svabek. *Id.* at 36. This appeal ensued.

# Discussion and Decision

Our standard of review is clear. "We first observe that a trial court's order granting summary judgment comes to us 'cloaked with a presumption of validity.'" *DiMaggio v. Rosario*, 52 N.E.2d 896, 903 (Ind. Ct. App. 2016) (internal citations omitted). Further,

> [w]e review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*). However, we will affirm the "trial court's entry of summary judgment if it can be sustained on any theory or basis in the record." *DiMaggio*, 52 N.E.3d at 904.

[5] In his brief on appeal, Svabek contends that the trial court erred when it entered summary judgment based on his failure to pay his deductible within ten days and based on the policy exclusions with regard to the three medical malpractice claims he had submitted to Lancet. Svabek also contends that the trial court erred when it entered summary judgment in favor of Lancet because genuine issues of material fact exist regarding whether Lancet is entitled to rescission of the contract. Again, the trial court concluded that Lancet was entitled to rescind the policy, as a matter of law, because of two misrepresentations made by Svabek on his application, namely, that he had no known claims pending against him and that he had not previously been denied coverage for a claim. Because the trial court concluded that Lancet was entitled to summary judgment on the rescission issue alone, and because, as we explain below, Svabek has not met his burden to prove that the court erred on that issue, we need not address the alternative grounds for summary judgment.

[6] As this court has held,

> [f]raud in the inducement of a contract is a proper basis for rescission. *Hart v. Steel Prods., Inc.*, 666 N.E.2d 1270 (Ind. Ct. App. 1996), *trans. denied*. The remedy of contract rescission functions to restore the parties to their precontract position, that is, the status quo. *Stevens v. Olsen*, 713 N.E.2d 889 (Ind. Ct. App.

1999), *trans. denied*. A request for rescission of a contract is addressed to the sound discretion of the trial court. *Barrington Management Co., Inc. v. Paul E. Draper Family Ltd. Partnership*, 695 N.E.2d 135 (Ind. Ct. App. 1998). The party seeking rescission bears the burden of proving his right to rescission and his ability to return any property received under the contract. *Id.* On the other hand, the party appealing the trial court's grant of rescission has the burden of demonstrating that the trial court's decision was erroneous. *Id.* Rescission is appropriate where the party seeking rescission is not in default and the defaulting party can be restored to the same condition he occupied before the making of the contract. *Id.*

\* \* \*

. . . [T]he rescission of a contract requires affirmative action immediately upon the discovery of the fraud. *INB Nat. Bank v. Moran Elec. Service, Inc.*, 608 N.E.2d 702 (Ind. Ct. App. 1993), *trans. denied*. One who asks a court's aid in compelling the rescission of a contract must show that he or she exercised reasonable diligence in ascertaining the facts and thereafter promptly sought rescission within a reasonable time after discovering the fraud. *Id.* The question whether the party seeking rescission acted within a reasonable time is ordinarily a question of fact, but becomes a question of law where the facts have been ascertained. The determination of whether a delay in seeking rescission results in waiver depends on whether the delay was long enough to result in prejudice to the other party. *Id.*

*A.J.'s Automotive Sales, Inc. v. Freet*, 725 N.E.2d 955, 967-68 (Ind. Ct. App. 2000), *trans. denied*.

[7] In support of his contention that the trial court erred when it concluded that Lancet was entitled to rescission of the policy on summary judgment, Svabek

avers that genuine issues of material fact exist regarding (1) whether he had knowledge of "one or more" of the three medical malpractice claims against him "when he signed the Statement of No Known Claims/Losses" in his application for the policy and (2) whether "Lancet's offer of rescission was reasonably prompt under the circumstances." Appellant's Br. at 16. But Svabek omits *any* argument with respect to the trial court's conclusion that he also misrepresented in his application whether a "prior insurance carrier had refused or declined to issue coverage regarding any medical incident or threat of claim" and the court's conclusion that a prior denial of coverage "is material to an insurer's decision to issue coverage." Appellant's App. Vol. II at 30, 33.

[8] The trial court concluded that Lancet was entitled to rescission based on each of Svabek's misrepresentations in the application. On appeal, Svabek does not deny that he falsely claimed in his application that "no prior insurance carrier had refused or declined to issue coverage regarding any medical incident or threat of claim." *Id.* at 30. And Svabek does not challenge the trial court's conclusions that "a prior carrier's previous denial of coverage for an existing claim is material to an insurer's decision to issue coverage" and that, "[a]ccordingly, [his] untruthful statement entitles Lancet to summary judgment in its favor as to its request for a judgment declaring its right to rescind the Policy." *Id.* at 33. Finally, Svabek makes no argument on appeal that Lancet did not "promptly s[eek] rescission within a reasonable time after discovering

the fraud" with respect to the denial of coverage misrepresentation.[1] *Freet*, 725 N.E.2d at 968.

[9] In sum, Svabek has failed to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," namely, that Lancet is entitled to rescission based on Svabek's misrepresentation on his application for insurance regarding a prior denial of coverage. *Hughley*, 15 N.E.3d at 1003; *and see Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997) (holding a material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option). Again, we will affirm the trial court's entry of summary judgment on any theory supported by the record. *DiMaggio*, 52 N.E.3d at 904. Svabek has not met his burden on appeal to persuade us that the trial court's entry of summary judgment was clearly erroneous.[2]

[10] Affirmed.

---

[1] To the extent Svabek attempts to make that argument in his Reply Brief, it is well settled that a party may not raise an issue for the first time in a reply brief. *See Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 n.6 (Ind. 2001). Moreover, we note that Svabek does not direct us to any evidence in the record to show when Lancet first became aware that Svabek had lied in his application. Svabek maintains that Lancet was "on notice" about the misrepresentation with respect to known claims when it "began defending the Sykes and Williams Matter" on behalf of Svabek in December 2012 "or shortly thereafter." Appellant's Br. at 16. But Svabek does not explain how Lancet's defense in that litigation tends to prove that Lancet knew about either of Svabek's *misrepresentations* in his application at that time. And Svabek does not cite any evidence in the record to show when Lancet knew that Svabek had previously been denied coverage by another insurance carrier.

[2] Because we affirm the trial court's entry of summary judgment for Lancet, we need not address Svabek's contention that the court erred when it struck several paragraphs from his proposed findings and conclusions.

Riley, J., and Bradford, J., concur.